(No. 12295.—Judgment affirmed.)

John J. O'Connor, Appellee, *vs.* The Maryland Motor Car Insurance Company, Appellant.

*Opinion filed February 20, 1919—Rehearing denied April 2, 1919.*

1. Insurance—*definition of abandonment, in its technical sense.* Abandonment, in its technical sense, means the relinquishment of a right or the giving up of one's own property absolutely, without reference to any particular person or purpose, and in maritime insurance law it means relinquishment to the underwriters of all claim.

2. Same—*time is not an essential element of abandonment.* Time is not an essential element of abandonment, but the moment the intent to abandon and the relinquishment of possession unite the abandonment is complete.

3. Same—*abandonment is voluntary but cannot be made unless loss is constructively total.* Abandonment is not necessary where the loss is actually total but only where the loss is constructively total, and it is never obligatory upon the insured but operates only as a voluntary transfer of title.

4. Same—*construction of automobile insurance policy as to the right of abandonment.* Where an automobile is insured against theft, to render the policy of value to the owner there must be some time fixed after which the return of the stolen car will not release the insurer from liability, and where such a policy provides that the insurance shall not be payable until sixty days after proof of loss, a further provision that there can be no abandonment of the property will be construed to prohibit abandonment only before the expiration of the sixty days.

5. Same—*cases of maritime insurance are applicable to automobile insurance only by analogy.* Cases of maritime insurance cover a branch of the law having well understood customs and rules, distinct, in some respects, from those relating to other classes of property, and they can be applied only by analogy to a case of automobile insurance.

6. Same—*insured may rely upon agent's assurance that proof of loss is sufficient.* Although a policy of insurance requires sworn proof of loss, the insured has a right to rely upon the assurance of the agent of the company that his written notice of the loss was received and was sufficient proof of loss.

7. PRACTICE—*what question cannot be raised for first time in court of review*. An objection that the wrong party is suing on an insurance policy, which was assigned, after loss, as collateral security, cannot be made in a court of review where the question was not raised in the trial court.

8. EVIDENCE—*what evidence is not admissible in suit for automobile insurance*. Where an automobile is insured against theft, in a suit on the policy after the car has been stolen, evidence that the insured purchased a new automobile shortly after the theft is not relevant to the issue, but its admission is harmless where a directed verdict is justified under a proper construction of the policy.

APPEAL from the Second Branch Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. SHERIDAN E. FRY, Judge, presiding.

BATES, HICKS & FOLONIE, for appellant.

ADLER, LEDERER & BECK, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

Appellee, John J. O'Connor, having had his automobile stolen upon which he had a theft insurance policy in the appellant company, brought suit in the municipal court of Chicago to recover the value of the automobile as fixed by the policy. The trial court directed a verdict in his favor for $1375 and costs, and from the judgment entered thereon an appeal was taken to the Appellate Court, where the judgment was affirmed. The Appellate Court issued a certificate stating that the questions involved were of such importance that they should be passed upon by the Supreme Court, and the case is here by appeal.

Appellee was the owner of a Hudson car and insured it in the appellant company for one year from March 31, 1916, through Roy E. Claypool, an agent of the company. Sunday evening, September 10, 1916, O'Connor left his car at the corner of LaSalle and Randolph streets, in Chicago,

while he went to a near by restaurant, asking a street railway employee to watch it. A few minutes thereafter a young man jumped into the car, unlocked it and drove rapidly away. The next day appellee went to Claypool's office and reported his loss and also sent a letter detailing the circumstances. About five days thereafter appellee bought a new car, giving his note therefor and assigning the policy here in question to the company from which he bought the automobile, as collateral security for the note. On November 15, 1916, the Chicago police department notified appellee that they had recovered the stolen car, and he accompanied a police officer to a down-town garage, where he identified it as the car which had been stolen from him. He refused, however, to take it, on the ground that he was entitled to the insurance money under the policy from the appellant company and that the car belonged to the company, and he wrote to the company to that effect, stating that he intended to use the money from said policy to pay off the note given for the new car. The company refused to pay the policy, on the ground that the car had been recovered and that appellee could take it if he desired. Appellee brought this suit for a recovery under the policy on February 21, 1917. The automobile was insured for an amount not exceeding $1375 against loss by fire, and also "against loss or damage by theft or robbery by any person or persons other than those in the employment, service or household of the insured."

The policy provides among other things: "In the event of loss or damage under this policy this company shall be liable only for the actual cost of repairing, or, if necessary, replacing the parts damaged or destroyed. It shall be optional with this company to repair, re-build or replace the property lost or damaged with other of like kind and quality within a reasonable time, on giving notice, within thirty days after the receipt of the sworn statement of loss herein required, of its intention so to do, but there can be no aban-

donment to this company of the property 'described." It further provides: "In the event of loss or damage the insured shall forthwith give notice thereof in writing to this company or the authorized agent who issued this policy and protect the property from further loss or damage, and within sixty days thereafter, unless such time is extended in writing by this company, shall render a statement to this company, signed and sworn to by said insured, stating the knowledge and belief of the insured as to the time and cause of the loss or damage." The last provision of the policy, which it is particularly necessary to consider in order to reach a correct conclusion on the questions here involved, reads as follows: "The sum for which this company is liable pursuant to this policy shall be payable sixty days after the notice, ascertainment, estimate and satisfactory proof of the loss herein required have been received by this company."

Counsel for appellant state correctly, in our judgment, that the policy here in question is, in part at least, a combination of fire and marine insurance form of contract. Many decisions are cited by counsel for each side with reference to loss under maritime insurance policies, and there can be no question that on principle the theft of an automobile insured against theft, and subsequently recovered, presents a case somewhat analogous to the capture of an insured ship in time of war which is subsequently recovered from the enemy and restored to the owner. A policy similar to the one here in question does not seem to have been construed heretofore by the courts of this State. The decisions from other jurisdictions on policies similarly worded may be persuasive as to the conclusion to be reached but are certainly not decisive. The correct conclusion on the questions here raised depends largely upon the proper construction to be given to the particular policy here in question.

Counsel for appellant contend, as we understand their argument, (1) that the policy denies the right of abandon-

ment and recovery under the policy (because of such abandonment) for the total loss of the automobile; (2) that the alleged abandonment became wrongful or invalid upon the subsequent recovery of the automobile. These two claims, it seems to us, are in a sense inconsistent, for if there is no right of abandonment then there would be no rights growing out of the alleged abandonment that could be divested by subsequent occurrences. Abandonment, in its technical sense, means the relinquishment of a right; the giving up of something to which one is entitled; the giving up of a thing absolutely, without reference to any particular person or purpose. In maritime law it means relinquishment to the underwriters of all claim. (1 Corpus Juris, 5; 1 R. C. L. 2, 3.) Time is not an essential element of abandonment. The moment the intention to abandon and the relinquishment of possession unite the abandonment is complete. (1 Corpus Juris, 8.) Abandonment is not necessary when the loss is actually total, nor can the abandonment be made unless the loss is constructively total. It is never obligatory upon the insured but operates only as a voluntary transfer of title. (*The St. Johns,* 101 Fed. Rep. 469.) It is manifest from the provisions of the policy quoted above that it is intended there should not be any voluntary abandonment by the insured to the company, using that word in its technical sense, but it is also apparent from reading and construing the provisions of the policy together that it was intended that there could be no recovery for a total loss of the automobile if the insurance company desired to replace the property on giving, in accordance with the terms fixed in the policy, the required notice. The policy also provides that the sum for which the company is liable shall be payable in sixty days after notice and satisfactory proof of the loss. There can be no question that the liability of the company might be affected by the return of the automobile and the giving of the required notice before the expiration of the sixty days, but we are disposed to hold that if, after

the notice and satisfactory proof of loss were given, sixty days had expired before the finding and return of the automobile, the policy intended that there might be full recovery from the company for the value of the automobile,— and this without reference to the question of abandonment. As we construe this policy as to loss by theft, the term "abandonment," as used in the quoted provision, was intended to mean that there could be no voluntary abandonment (using the word in the technical sense) by the owner before the expiration of the sixty days.

Counsel for appellant cite and rely on a number of English cases which seem to hold that the subsequent recovery of a captured ship prevents the owner from being entitled to the insurance as for a total loss even if such recovery is after the insured has abandoned his interest to the underwriters. Counsel for appellee, on the other hand, argue that the English doctrine on this question has not been followed in this country and that many of our courts have expressly stated they do not agree with the English doctrine. Counsel cite and rely in this regard on *Norton* v. *Lexington Ins. Co.* 16 Ill. 235, and also *Bradlie* v. *Maryland Ins. Co.* 12 Pet. 278. All of the English and American cases cited have reference to maritime insurance,—a branch of the law having well understood customs and rules, distinct, in some respects, from those relating to other classes of property,—and can only be applicable, by analogy, to the case at bar. In view of the construction that we have given to the provisions of this policy we do not deem it necessary to refer to these decisions, except to say that we agree with counsel for appellee that the decisions in this country, and especially *Norton* v. *Lexington Ins. Co. supra,* decided by this court, are not in accord with the reasoning of the English cases.

This suit was instituted after the lapse of sixty days from the notice and proof of loss but after the automobile had been found. Counsel for appellant seem to concede

287 — 14

that if the suit had been instituted before the automobile had been found, under the reasoning of the English cases appellee could have recovered for the full amount of the machine,—that is, that the date of the starting of the suit fixed the time of recovery for a total loss if the machine had not been found before that date. Obviously, in order to make an insurance policy of this kind of value to the owner of the property there must be some time fixed after which the return of the automobile will not release the company from liability. Automobiles are so generally used in business affairs and other activities of life that public policy requires that a person having a theft policy should not be compelled to wait indefinitely on the chance of having the stolen automobile recovered or be compelled to incur the expense of buying a new one and thereafter taking the old one back if recovered. Fairly construed, we think this insurance policy intended to fix the date at sixty days after the notice and satisfactory proof of loss had been received by the company,—in other words, to fix the date at which the insured would not be compelled to take the stolen car back, even if recovered, at the date when the insurance money was agreed to be paid.

Counsel for appellant further argue that there was no proper proof made by appellee of the loss of the automobile. Appellee gave notice in writing on the day following the theft, which, it is shown, was received by the agent of the company the day after it was mailed. On the same day that the written notice was received appellee called on the agent of the company and offered to make an affidavit or sworn statement, but was told by the agent that the letter had been received and was sufficient and that no further notice or proof need be given. While some of the letters were addressed to the appellant company and others were addressed to a guaranty company which apparently had close connection with appellant, there can be no question, from a consideration of the whole transaction, that the

appellant company through its proper agent recognized the sufficiency of the notice given and waived the furnishing of sworn proof. Appellee had a right to rely upon the agent's assurance that his proof was sufficient. It was held by this court in *Atlantic Ins. Co.* v. *Wright,* 22 Ill. 462, that when a representative of an insurance company had no fault to find with the proofs but was satisfied with them, if there existed any informality in the preliminary proofs of loss such informality was expressly waived by the company. The reasoning, also, of this court in *Insurance Company of North America* v. *McDowell & Brown,* 50 Ill. 120, would lead to the same conclusion. On this record the appellant cannot raise any question that the notice and proof of loss did not comply with the provisions of the policy.

Counsel for appellant further argue that the court erred in permitting a judgment to be entered against appellant when the proof showed that the policy had been assigned to the Louis Geyler Company by appellee as collateral security for the note given for the new automobile. The point now made on this question is that the wrong party is bringing the suit. No such objection was made in the trial court. It is insisted by counsel for the appellee that the policy had been re-assigned by the Louis Geyler Company, before the trial, to the original beneficiary, appellee herein. We agree with counsel for appellant that there is nothing in the record to indicate such re-assignment back to appellee. The special point, however, as to the wrong party suing, not having been raised in the trial court it is too late to raise it for the first time in a court of review.

Counsel for appellant also argue that the trial court erred in its rulings on the admission of evidence. Over the objection of appellant the trial court admitted evidence on behalf of appellee to the effect that he had purchased a new automobile shortly after the theft. They argue that such proof was calculated to mislead the jury into seeking to relieve plaintiff of an undesirable vehicle and require

the appellant company to replace it with a new one.    We do not see any ground upon which the evidence was properly admissible, but under a proper construction of the policy as held above the verdict as directed by the trial court was justified, and we cannot see how the improper admission of this evidence in any way affected the result.

It is also argued by counsel that the court improperly admitted a letter sent from the local office in Chicago to the home office in Maryland in which the Chicago agent stated that the claim of the loss had been reported to the office immediately and had been referred to the adjuster, and that the agent considered that proper proof of loss had been made by appellee and that the writer thought that the loss should be paid; that it would be good business policy for the company to pay the loss rather than contest the claim.    The evidence tends to show that the local agent of appellant was a personal friend of appellee and seemed to desire that appellee should recover under the policy, but the main office of the company did not agree with the view of its local agent.    Conceding this letter was inadmissible, we do not see, construing the policy as it has been construed and a directed verdict being justified, that appellant was in any way injured by the introduction of this evidence.

Counsel also object to the examination of the local agent during the trial under the provisions of section 33 of the Municipal Court act.    (Hurd's Stat. 1917, p. 906.)    No material error was committed by the trial court as to this examination.

We find no reversible error in the record, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*