15352.   IRVIN *v.* NEW BRUNSWICK FIRE INSURANCE
COMPANY.

Where an automobile was insured against theft, and the insurer, upon its
being stolen, paid to the owner his entire loss and took from him a
receipt and assignment stipulating that in consideration of the payment
all claims and demands of the assured against any person or property
arising from or connected with the loss were thereby transferred and
assigned to the insurer, who should be subrogated thereto in place of the
assured, and where it did not appear at the time of the assignment that
the assured had a right of action against any one, except one in tort
for the conversion, and that the assured thereafter claimed no further
title or interest in the automobile, but that the insurer did, and where
such extraneous facts appeared without objection or dispute upon the
trial of a subsequent action of trover for the automobile, instituted by
the insurer against a third person, a finding was demanded that at the
term of filing the suit the insurer had title to the automobile and a
cause of action for its conversion, and no error was committed in direct-
ing a verdict in favor of the insurer.

DECIDED APRIL 23, 1924.

Trover; from Muscogee superior court—Judge Munro.  Janu-
ary 12, 1924.

*A. W. Cozart, Davis & Davis,* for plaintiff in error.

*Love & Fort,* contra.

BELL, J.  New Brunswick Fire Insurance Company issued to
H. J. West a policy of insurance against loss by theft or fire upon
a certain automobile.  The policy stipulated, among other things,
that the company might require from the assured an assignment
of all right of recovery against any person for loss or damage, to
the extent of any payment made therefor by the company.  There-
after, on January 4, 1921, the automobile was stolen.  The assured
submitted a proof of loss on March 18, 1921, reciting that the
actual amount of loss sustained under the terms of the insurance
was $1,480.  This sum was thereupon paid to the insured by the
company, under the terms of the policy, for which the following
receipt and agreement was issued: "Received of the New Bruns-
wick Insurance Company the sum of $1,480, being in full of all
claims and demands for loss and damage by fire, theft, on the 4th
day of January, 1921, to the property insured by policy number
100542, issued at Atlanta, Ga., agency of said company, and, in
consideration of such payment, the undersigned hereby assigns
and transfers to the said company each and all claims and de-
mands against any person or persons, corporations or property,

arising from or connected with loss or damage (and the said company is subrogated in the place of and to the claims and demands of the undersigned against said person, persons, corporation or property in the premises) to the extent of the amount above named. H. J. West." Thereafter the automobile was found in the possession of C. G. Irvin, of whom a demand for the car was made on behalf of the insurance company and refused. The company subsequently, on May 16, 1921, filed a trover suit in which the value of the property was alleged at $1,500. Upon the trial West testified: "The value of that car was about $1,600 or $1,700." It does not appear whether he was referring to the value of the car at the date of the policy, at the happening of the loss, or when. He further testified: "That subrogation receipt is the only bill of sale or writing that I have ever signed to the insurance company. I suppose that is what they took from me for the purpose of conveying my interest in the car. That's all I gave them or executed to them." "Since I was paid by the insurance company for the loss of my Buick touring car, model K-45, . . I have had no right, title, or interest in the car, nor do I claim any right, title, or interest in the car now." C. A. Rauschenberg testified that as agent for the company he made the settlement with West, at which time he took the receipt which is set out above, "conveying any further interest he might have in the automobile." This witness said further, however, "I cannot tell you who owned the car on May 16, 1921, except that I took the subrogation receipt at the time of the settlement of the loss." No evidence was offered in behalf of the defendant, and at the close of the evidence a verdict was directed in favor of the plaintiff. The defendant thereafter filed a motion for a new trial, assigning error upon such direction. His motion was overruled and he excepted.

If the company had exercised the forethought of taking a receipt and assignment more specific in terms as to what was or was not conveyed to it thereunder, this court would have been very much obliged. It is a pity it did not do so, in order that a decision of the case either for or against it could have been made with less difficulty and more certainty. In undertaking to interpret the receipt, however, we will not examine it in its naked form, but will seek needed light from "all the attendant and surrounding circumstances." Civil Code (1910), § 4268 (1).

The case is not one where the plaintiff is relying solely upon the right of subrogation because of having paid the loss, independently of a legal assignment. If it were, it seems that under the law of this State the action should have been brought in the name of the insured, even though the company had paid the loss in full. *Atlanta Cadillac Co.* v. *Manley,* 29 *Ga. App.* 522 (2) (116 S. E. 35). A different rule seems to prevail, however, in some jurisdictions. See note in 26 A. L. R. 432.

Although the plaintiff alleged in the suit that the automobile was of the value of $1,500, this does not show that *as to the assured* it did not pay the entire loss, and no other persons were interested. Indeed it appears from the evidence that as between the parties to the settlement the entire loss was satisfied. The assured, in the proof of the loss, represented that the actual amount thereof was $1,480. This the company paid. Every interest or claim which the assured had in the automobile was thereby terminated, excepting perhaps the fact that he would have retained the naked title in the absence of the assignment. The sum received was the value which he placed upon the automobile in adjusting the loss with the insurer, and this amount being paid, it does not seem that the defendant is concerned with whether or not the insurer thereafter placed a higher value on the automobile, as it did in its suit. See *Louisville & Nashville R. Co.* v. *Morse,* 143 *Ga.* 110 (2) (84 S. E. 428). The parties were free, as in any case, to agree upon the price of the subject-matter.

In the light of the undisputed circumstances, what did the parties mean in stipulating that all claims and demands against any person, or property, arising from or connected with the loss, were assigned and transferred to the company, and that as to such claims and demands the company was subrogated in place of the assured? The only right which the assured could have had against any one was his claim of title to the automobile, and for the conversion thereof, as against some one wrongfully in possession of it. In so far as the record shows, it did not appear at the time of the settlement (nor does it so appear even now) that the person wrongfully taking the automobile, or any one else, had converted it into money or its equivalent, so that the assured might, waiving the tort, have sued upon an implied contract for its value, or for the proceeds of its sale as for money had and received. So far as is

disclosed by the facts in evidence, he would have been confined to an action of trover for an unlawful detention of his property. *Woodruff* v. *Zaban*, 133 *Ga.* 24 (65 S. E. 123, 134 Am. St. R. 186, 17 Ann. Cas. 974); *Southern Ry. Co.* v. *Roberson*, 136 *Ga.* 146 (71 S. E. 129); *Kirkpatrick Hardware Co.* v. *Hamlett*, 20 *Ga. App.* 719 (1) (93 S. E. 226). The property had not been destroyed or injured. The loss was by theft.

It is suggested by counsel for plaintiff in error that the receipt does not contain any conveyance or transfer of title to the automobile itself. Unless it does, we cannot see that there was a conveyance or transfer of anything. Unless the parties meant that the writing should transfer the title and the right to sue for the property, such being the only interest the assured had, they could not have intended anything. They will be presumed to have intended something, and not to have been purposely trifling. The receipt transferred to the insurer the claim and demand of the assured only "to the extent of the amount above named," being the amount of the loss which the company paid and the assured received. This, as to the assured, was the entire value of the automobile, and no one else had a value or interest in it.

It was held by the Supreme Court in *Sullivan* v. *Curling*, 149 *Ga.* 96 (99 S. E. 533, 5 A. L. R. 124), that a chose in action arising from a tort is assignable, where it involves, directly or indirectly, a right of property; and where there has been a complete legal assignment of such a chose in action the assignee may institute and maintain an action against the defendant tort-feasor for the entire damage sustained, the assignor not being a proper party plaintiff to the suit. While it is true that the term chose in action is applied rather to intangible property (see same case, page 100), we nevertheless think that under the rulings made in that decision, the writing now before us, when construed in the light of the surrounding circumstances, must be taken as a transfer of the title to the automobile. This conclusion is fortified by intimations of the Supreme Court in *Ford* v. *Atlantic Compress Co.*, 138 *Ga.* 496 (75 S. E. 609, Ann. Cas. 1913D, 226). See also *Norwich Union Fire Ins. Society* v. *Wellhouse*, 113 *Ga.* 970 (1) (39 S. E. 397); *Trust Company of Ga.* v. *Scottish &c. Ins. Co.*, 119 *Ga.* 672 (1) (46 S. E. 855). It was held in *Willis* v. *Burch*, 116 *Ga.* 374, 375, that an action of trover should be

brought by the person having the legal right or title to the property *at the time of its conversion.*   But the Supreme Court criticises that case in *Sullivan* v. *Curling,* supra, observing that it was a decision by five judges, "and is not binding, especially in view of the fact that it is not in harmony with the new legislation introduced into the Code of 1895."

Moreover, a writing is not essential to the transfer of title to personalty.   The evidence discloses, without dispute, that it was the intention of both parties that the title to the automobile should, from and after the execution of the receipt and assignment, be vested in the insurance company.   Compare Civil Code (1910), § 4267.   The assured could have agreed orally with the company's agent to a surrender of his title.   The law recognizes implied contracts.   A fact may be established as well by circumstantial as by direct evidence.   Even if the scope of the assignment was insufficient actually to convey title, it at least appears that the assured abandoned the property to the insurer upon the payment of the loss, and that this was accepted.   There is some similarity to cases of marine insurance, as to which the rule is laid down that where the insured vessel becomes a total loss, the assured may abandon it to the insurer, even when the insurer does not consent.   Such an abandonment, when properly made, amounts to a transfer of the property to the underwriter, and gives him a title to it or what remains of it as far as it was covered by the policy.   Patapsco Ins. Co. *v.* Southgate, 5 Peters (U. S.), 604, 622 (8 L. ed. 243) ; Bradlie *v.* Maryland Ins. Co., 12 Peters (U. S.), 378, 399 (9 L. ed. 1123).   While the property was not forced upon the insurer in this case, it appears that the assured, in receiving full payment of the loss, considered that he had no further interest or title in it.   It is not supposable, under the facts, however, that he abandoned it or relinquished his right without reference to any particular person or purpose, but that he did so with the intention that it would be received by the plaintiff.   The plaintiff appears to have responded by acceptance.   O'Connor *v.* Maryland Motor Car Ins. Co., 287 Ill. 204 (122 N. E. 489, 3 A. L. R. 787).

We have deemed it unnecessary to confine our decision to a construction of the bare writing, and we base our conclusions upon all of the facts appearing in the record, in view of which we think

that the trial court was right in directing the verdict in favor of the plaintiff.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*