SAWYER, Respondent, v. NATIONAL FIRE INS. CO., Appellant.

(220 N. W. 503.)

(File No. 5698.   Opinion filed July 14, 1928.)

230

*Cherry & Davenport,* of Sioux Falls, for Appellant.
*Mundt & Mundt,* of Sioux Falls, for Respondent.

MORIARTY, C. The respondent brought this action to recover upon a policy of theft insurance covering a Mitchell touring car. The jury returned a verdict for the plaintiff in the sum of $1,500. From a judgment entered in accordance with the said verdict, and from an order denying a new trial, the defendant appeals.

As the jury found for the plaintiff, we are justified in resolving all conflicts of evidence in favor of the plaintiff. So considered, the facts shown by the record are as follows:

On or about September 3, 1921, the plaintiff, Sid Sawyer, bought a Mitchell touring car from Thompson & Co., motor vehicle dealers in Sioux Falls. The price agreed upon for the car was $1,650. Thompson & Co. secured from one Hayward, who was the state agent for the defendant company, a policy whereby said defendant company insured the said Mitchell touring car against loss by theft for the term of one year from and after September 3, 1921. This policy named Sawyer as owner, and had attached to it a mortgage clause making loss, if any, payable to Thompson & Co., as their mortgage interest might appear.

The terms upon which Sawyer purchased the car were as follows: He paid $200 in cash, $1,050 in merchandise and gave Thompson & Co. eight notes of $50 each, payable one each month. The indebtedness represented by these notes was that constituting Thompson & Co.'s mortgage interest. Thompson & Co. retained possession of the policy until after all of these notes had been paid, and, upon payment of the last note, surrendered the policy to Sawyer.

When Sawyer received the policy, he considered that the mortgagee clause was no longer in effect, so he detached and destroyed the rider.

Thereafter, and some time before midnight on Saturday, August 18, 1922, the car covered by the policy was stolen from where Sawyer had parked it, near his store in the business district of Sioux Falls.

On Monday, August 20, 1922, Sawyer went to an insurance agency conducted by one Lemen in the city of Sioux Falls, under the name of the Queen City Insurance Agency. Sawyer spoke to Lemen about the loss of the car, and Lemen told him to go to the desk of Mr. Partch, who would attend to it. Partch had a formal notice of loss prepared, signed it, and mailed it to the defendant company. Inclosed with this report was a letter signed "Queen City Insurance Agency, D. P. Lemen, Mrg., by E. H. P." This letter, dated August 21, 1922, states:

"We inclose herewith complete report in connection with loss previously reported under the above mentioned policy. (Number given being that of policy issued to Sawyer.)

"We find that the above policy was written personally by your Mr. Hayward, therefore we do not have a copy of the policy and would appreciate you furnishing us with a copy of the daily report. We are forwarding a copy of the report which we inclose to your Mr. Hayward."

At all times subsequent to about August, 1921, Lemen was an agent of the defendant company, with authority to countersign and issue policies, to collect and transmit premiums, to deliver drafts issued in settlement of loss claims, and to take proofs of loss. And Lemen's agency did all these things for the defendant company during the year 1922. Subsequent to about May 1, 1922, Partch was employed in Lemen's agency and working under Lemen's direction.

Immediately after the preparation of the notice of loss mailed to the defendant company about August 21, 1922, Partch told Sawyer that he had done all that need be done in the matter of his loss claim. Partch said:

"You don't need to worry at all. We will do all that could be done in this case. You don't need to go any farther. We will take care of this case for you."

And repeatedly thereafter, and within 60 days after the loss, Partch told Sawyer:

"All you have to do is to wait the sixty days. If we don't find the car for you, you get the money."

Sawyer asked Partch if there was anything for him (Sawyer) to send, and Partch said, "No; you have done all you can do."

About 10 days after the loss of the car, Sawyer asked Lemen if the papers had been sent to the company. Lemen said, "Yes; Mr. Partch took care of them." Sawyer asked Lemen if any papers had to be signed, and Lemen said, "No." Sawyer asked him if he (Sawyer) should send in any sworn paper or legal paper of any kind, and Lemen said, "No."

On September 6, 1922, Hayward, the defendant's state agent, wrote the defendant concerning the Sawyer claim. And on September 11, 1922, the superintendent of defendant's Western Department wrote Hayward, "We shall be glad to have you continue to give this claim your attention."

Thereafter one Henry Wilson, who was acting as an adjuster sent out by the Western Adjustment & Inspection Company, an Illinois corporation, came to the plaintiff, and secured from him certain information as to the appearance and markings of the stolen car. Wilson then had in his possession a copy of the notice of loss sent by Partch to the defendant. He also had the letter sent to Hayward by the defendant's Chicago office, and asking him to continue to give the Sawyer claim his attention. Hayward gave these papers to Wilson, and employed him to investigate the claim.

Sawyer gave Wilson the information as to the stolen car, and asked Wilson if there was anything else he (Sawyer) should do, and Wilson said:

"No, all you have to do is wait 60 days; if we find the car, we will bring it back; if not, we will pay the damage. If the company wants any writing, they will fix it up with you."

Sawyer testified that he relied upon the statements made to him by Lemen, Partch, and Wilson.

About November 20, 1922, Sawyer received a letter from a party at Deronda, Wis., informing him that a Mitchell touring car, partly burned, had been found near that place, and a license plate identified as Sawyer's was found some distance from the car. Sawyer immediately reported this information to Lemen and to

Partch, but told them that he would not attempt to recover the car or to identify it—that the company would have to attend to that. The car was never returned to Sawyer, and no payment was ever made to him by the defendant.

Minor details of other parts of the record will be mentioned in connection without discussion of the points argued in the briefs.

Appellant's counsel set out in their brief 150 assignments of error, but their argument is presented under eight distinct heads, as follows:

First. That no proof of loss was furnished within 60 days as provided by the policy.

Second. That the action was prematurely brought.

Third. That the plaintiff knowingly made a material alteration in the policy.

Fourth. That there was a breach of the warranty as to the place where the car was kept.

Fifth. That there was a breach of the warranty that the car was a 1920-21 model.

Sixth. That there was a breach of the warranty that the car was fully paid for.

Seventh. That there was a violation of the provision as to nonabandonment.

Eighth. That there was no evidence to support a verdict as to the extent of the loss or damage covered by the policy.

■ The provision as to the furnishing of proofs of loss is a provision that may be waived by the acts of the insurer or its agents. 14 R. C. L., Insurance, § 517; 55 C. J., Insurance, § 683; Revised Code of 1919, § 1447; Hitchcock v. State Ins. Co., 10 S. D. 271, 72 N. W. 898; Harding v. Ins. Society, 10 S. D. 64, 74 N. W. 755; Reeves v. Fire Ins. Co., 41 S. D. 341, 170 N. W. 575; 4 A. L. R. 1293; Huddy on Automobiles, § 1074.

■ Lemen and his employee Partch, acting under Lemen's direction, and the adjuster Wilson, sent to the plaintiff by Hayward, were such agents as could by their acts waive the sending of formal proofs of loss. Section 1447, Revised Code of 1919; 14 R. C. L., Insurance, § 518; 33 C. J., Insurance, § 680; Hitchcock v. State Ins. Co., 10 S. D. 271, 72 N. W. 898; Harding v. Ins. Society, 10 S. D. 64, 74 N. W. 755; Reeves v. Fire Ins. Co., 41

S. D. 341, 170 N. W. 575, 4 A. L. R. 1293; Lawver v. Ins. Co., 25 S. D. 549, 127 N. W. 615; Vesey v. Com. Union Ins. Co., 18 S. D. 632, 101 N. W. 1074; Fosmark v. Fire Association, 23 S. D. 102, 120 N. W. 777; South Bend Toy Mfg. Co. v. Dak. F. & M. Ins. Co., 3 S. D. 205, 52 N. W. 866.

■ The evidence is sufficient to support a verdict upon the theory that the acts of defendant's agents waived the furnishing of proofs of loss.

■ As to the action being prematurely brought: Had formal proofs of loss been furnished, the claim would have become actionable 60 days thereafter. If the furnishing of proofs was waived, the 60 days would begin to run when the acts constituting the waiver were done. Those acts were done during August and September, 1922, and the suit was not begun until March, 1923. Appellant's contention on this point is entirely unsupported.

■ As to the material alteration of the policy, it is admitted that the plaintiff detached from the policy the mortgage clause rider. But this was after the entire debt secured by the mortgage had been paid, and Sawyer in good faith believed that the mortgage clause was no longer a part of the contract. To be material, the alteration must change the legal effect of the instrument. Prudden v. Nester, 103 Mich. 540, 61 N. W. 777; Fisherdick v. Hutton, 44 Neb. 122, 62 N. W. 488; 2 C. J., Alteration of Instruments, § 2; 1 R. C. L., Alteration of Instruments, § 4. The removal of the mortgage clause after the mortgage debt was paid was not a material alteration.

■ As to the contention that there was a breach of warranty as to the place where the car was to be kept: Under the printed caption "Warranties" in the policy is the statement:

"The automobile described is usually kept in private garage, located 512 So. Dak., Sioux Falls, South Dakota."

There is evidence that plaintiff was living at 512 South Dakota, Sioux Falls, at the time he bought the car, and that it was kept for a short time in a garage there, but that for several months prior to the loss the car was kept in a public garage near plaintiff's store. We do not need to decide whether the statement quoted was in fact a warranty. In no event can it be treated as a continuing warranty, and there was no forfeiture incurred by

plaintiff's failure to keep the car continuously at the garage mentioned in the policy. The contract of insurance specifically covered the car "while within the limits of the United States and Canada," while in building, on road or railroad car or other conveyance. Appellant's position on this point is untenable.

■ As to the description of the car as a 1920-21 model: The evidence tends to show that a 1920 model is a car made in 1919 and put on the market in 1920, and a 1921 model is a car made in 1920 and put on the market in 1921. The evidence also tends to show that the car covered by the policy was made in 1919 as a 1920 model car. But the evidence also shows that this particular car had been altered and added to so as to make it conform in appearance and substance to the 1921 model. There is nothing to show that this is not exactly what was meant and understood by the term 1920-21 model.

■ As to the contention that there was a breach of the warranty that the car was fully paid for: Appellant's agent attached to the policy a rider showing that the car was mortgaged to the firm from which plaintiff was purchasing it. Evidently there was no misrepresentation as to this item.

■ As to the alleged violation of the terms of the policy because plaintiff refused to attempt to recover the car from Deronda, Wis.: The 60 days after waiver of furnishing of proof had expired long before the information from Deronda reached the plaintiff. In transmitting this information to the defendant, he did all that was incumbent upon him at that time. If owners of motor vehicles are given to understand that it is their duty to pursue stolen cars for an indefinite period after the loss, it seems probable that there would be little such insurance written. The courts that have considered this question hold that the assured is not required to pursue the stolen property after the date when the policy provides that the payment is due. O'Connor v. Md. Motor Car Ins. Co., 287 Ill. 204, 122 N. E. 489, 3 A. L. R. 787; Cancilla v. Fireman's Fund Ins. Co., 277 Pa. 223, 120 A. 824; Joyce on Insurance (8th Ed.), §§ 2898, 2901, and 2770.

Appellant's contention that there is no evidence to support a verdict as to the extent of the loss is based upon the theory that it was the duty of the plaintiff to pursue the stolen property, de-

termine whether the car found in Wisconsin was the car covered by the policy, and prove the difference between the value of the car when stolen and as recovered in Wisconsin. What we have said as to the allegation of abandonment disposes of the contention as to measure of damages.

There are numerous assignments of error based upon rulings of the trial court on admission and exclusion of evidence and upon the giving of instructions, but the validity of these assignments is entirely dependent upon the appellant's erroneous views as to the waiver of proofs of loss and the other waivers above discussed.

We find no reversible error in the record, and the judgment and order appealed from are affirmed.

BURCH, P. J., and POLLEY, SHERWOOD, and BROWN, JJ., concur.

CAMPBELL, J., dissents.