**P. F. Hein, Appellee, v. Shell Oil Company, Inc., Appellant.**

Heard in this court at the May term, 1942. Opinion filed June 27, 1942.

JOHN C. QUAILTY, of Centralia, and CRAIG VAN METER and FRED H. KELLY, both of Mattoon, for appellant.

P. J. KOLB and WALTER F. KOLB, both of Mt. Carmel, for appellee.

MR. JUSTICE CULBERTSON delivered the opinion of the court.

This is an appeal from an order of the circuit court of Wabash county denying a motion to dissolve a temporary injunction and to dismiss the complaint, pursuant to which such injunction was issued, in favor of appellee, P. F. Hein (hereinafter called plaintiff), as against appellant, Shell Oil Company (hereinafter called defendant).

The complaint filed by the plaintiff alleged that plaintiff was the owner of certain real estate, and that the defendant was the owner of an oil and gas lease (which was set forth in the complaint), and that defendant was operating the oil and gas lease and producing oil from a certain oil well. It was alleged that the oil well, likewise, produced casinghead gas and that the plaintiff had connected a gas line which piped the casinghead gas from such oil well into his residence in which the gas was used for heating purposes. A temporary injunction was issued, without notice, enjoining defendant from disconnecting such gas line which the plaintiff had connected to defendant's oil well upon the premises leased by plaintiff to the defendant. The defendant thereafter filed a motion to dismiss the complaint and also a motion to dissolve the temporary injunction. Upon hearing, the court below entered an order overruling the motion to dissolve the temporary injunction, and defendant has appealed from such order.

It is alleged in the complaint that the defendant is operating five oil wells upon plaintiff's lands, pursuant to the terms of the oil and gas lease, and that one of the oil wells is situated behind the dwelling house of plain-

tiff, and that the gas from such oil well has been heretofore permitted to waste into the atmosphere by the defendant in the operation of its well. The complaint alleges that the pipe connection was made on November 5, 1941, but was disconnected by defendant on November 7, 1941, and that on November 8, 1941, it was reconnected by plaintiff (he alleges, with permission of defendant's agent) and that plaintiff has continued to use the gas for heating purposes since that date. It is also alleged that on November 12, 1941, defendant notified plaintiff that unless he disconnected his connection from the pipe line on or before 3:00 p.m. on November 13, 1941, that defendant would cut and destroy the gas line.

The oil and gas lease, under which defendant is operating oil wells, contains three royalty provisions, in the following terms:

"1st. To deliver to the credit of lessor, free of cost into tank reservoirs or into pipe line to which lessee may connect wells on said land, the equal one-eighth (⅛) part of all oil produced and saved from the leased premises.

"2nd. To pay lessor one-eighth (⅛) of the gross proceeds each year, payable quarterly, for the gas from each well where gas only is found, while the same is being used off the premises, and if used in the manufacture of gasoline, a royalty of one-eighth (⅛), payable monthly at the prevailing market rate for gas; and lessor to have gas free of cost from any such well for all stoves and all inside lights in the principal dwelling on said land during the same time by making lessor's own connections with the well at lessor's own risk and expense.

"3rd. To pay lessor for gas produced from any oil well and used off the premises or in the manufacture of gasoline or any other product a royalty of one-eighth (⅛) of the proceeds, payable monthly at the prevailing market rate at the mouth of the well."

The plaintiff's complaint, as amended, alleged that the volume of gas wasted from the well to which plaintiff had made his connection, was in excess of 35,000 cubic feet per day, exclusive of the small amount which was used by plaintiff in heating, and that the wasted gas is emitted from a discharge pipe or flare attached to the pipe and maintained by the defendants. Plaintiff contends (by allegations in the complaint) that he is entitled to use such gas under (1) the implied terms in the lease, or (2) in the alternative, irrespective of the terms in the lease, on the basis of custom and usage in the area. Plaintiff also contends, very vigorously in his brief in this court, that he is entitled to take the gas in the manner indicated on the theory that in any event the defendant was about to waste it.

Defendant in the motions to dismiss the complaint and to dissolve the temporary injunction, in addition to the contention that there is no right of action set forth and that plaintiff is not entitled to the injunctive relief under the facts as set forth in the complaint, also insists that the oil and gas lease, on its face, shows that plaintiff has no right to use the gas from an oil well and that such use is in violation of the terms of the lease.

It is of primary importance in determining the question before this court, to analyze and look to the provisions of the lease between the parties. A contract between parties dealing in oil and gas is subject to the same rules of interpretation as any other contract and there is no relation of special trust or confidence between the lessor and lessee in such lease, any more than in any other (*O'Donnell v. Snowden & McSweeney Co.,* 318 Ill. 374, 378). A court has no right, by construction, to establish a contract different from that expressed in the written agreement (*Decatur Lumber & Manufacturing Co. v. Crail,* 350 Ill. 319, 323; *Armstrong Paint & Varnish Works v. Continental Can Co.,* 301 Ill. 102, 105).

As stated by the court in the case of *Poe v. Ulrey,* 233 Ill. 56, at pages 63, 64, 65 and 66,

"So far as the charge that the contract was harsh and unjust is concerned, it may be said that the parties were competent to contract with each other and neither side can be relieved from their agreements on the ground that they did not use good business judgment in entering into the contract. . . . Their agreement shall be respected and enforced by the Courts, and . . . . Neither shall be relieved from the obligation of his contract, except upon some certain ground deemed valid by the law. . . . Counsel for Appellants insist that there was an implied agreement that the lessee would drill wells to reasonably develop the farm for production of oil and gas, and that the lease could be cancelled by the Court and the rights under it forfeited for failure to do so, and that the lease might be forfeited for failure to drill the well, although compensation was agreed upon. The argument would have greater force if the lease had not contained a provision that it could be forfeited for a failure to complete a test well on the block of leases, before the 1st day of May, 1905. That agreement would imply an exclusion of other grounds of forfeiture, and the agreement for compensation effectually excludes a forfeiture not stipulated for."

In proceeding with other construction of the lease in the instant case, it is obvious that the paragraph of the lease marked "1st" and set forth hereinabove, relates to the lessor's royalty in *oil* produced and saved. The second paragraph clearly relates only to gas from each well where *gas only* is found. In this connection it has been determined that there is a distinction in law between gas produced from a gas well and casinghead gas which flows from oil wells and comes between the casing and the tubing (*Humble Oil & Refining Co. v. Poe (Tex. Com. App.*), 29 S. W. (2d) 1019, 1020), and the court, in *Weaver v. Graham,* 109 Kan. 450, 199 Pac. 924, 925, points out that all clauses of oil and gas leases are to

be read together and if the fair meaning of all the clauses is that the right to the use of gas for domestic purposes is to be limited to gas produced from gas wells, even though it is not expressly stated, that interpretation should be adhered to by the courts. In the instant case the provision is clear and unmistakably expressed as to gas from gas wells.

The third paragraph of the oil and gas lease in the instant case referred to in this opinion, is clearly designed to provide for the casinghead gas from any oil well. The provision is simply that the lessor is to be paid for gas produced from such oil well, which may be used off the premises, or in the manufacture of gasoline, or any other product. The only gas which lessor is to have free of cost, by the terms of the lease, for domestic purposes is gas from wells which produce gas only, as specified in the second clause of the lease. It is conceded by plaintiff that the casinghead gas (which is being tapped by plaintiff in the line of defendant) upon its removal, may well become lessee's property, to be utilized by lessee in any proper manner (although compensation is due lessor, in cash, upon disposition of such gas), but it is contended by plaintiff that lessee does not have the right to waste such gas, and that under the authority of the case of *Brown v. Spilman*, 155 U. S. 665, the plaintiff had the right to take the gas which the defendant was planning to waste as herein stated.

The plaintiff makes reference to the case of *Caldwell-Guadalupe Pick-Up Stations v. Gregg* (Tex. Civ. App.), 276 S. W. 342, where a party was permitted to go down a depression running from the leased premises and construct pits on adjoining premises for the collection of oil which ran off lands in that vicinity. Such pits were not constructed on the leased premises, but on adjoining premises and did not in any way interfere with the operations of the leased premises. The conclusion of that court was modified in *Gregg v. Caldwell-Guadalupe Pick-Up Stations* (Tex. Com. App.), 286 S. W. 1083,

wherein it was determined that a lessee in an oil and gas lease has a right to erect structures necessary to produce and save oil, even if it would prevent lessor and his assignees from saving abandoned oil. It has been determined in this connection that a lessor under such lease cannot interfere with the rights of the lessee and with his operations upon the leased premises, and the law implies a covenant of quiet enjoyment of leased premises (*Wade v. Halligan,* 16 Ill. 507, 511; *Hayner v. Smith,* 63 Ill. 430, 432; *Field v. Herrick,* 10 Ill. App. 591, 593; *Giller v. Hollyfield,* 176 Ark. 861, 4 S. W. (2d) 526).

In the case before us plaintiff has gone upon the leased premises and actually connected the pipe, through which the casinghead gas was carried into the dwelling, on the casing or the pipe running into the oil well and from there plaintiff taps such gas into his house. At the place where the connection was made the gas was still in the possession of the lessee and was not abandoned property. In addition to an intention to abandon, for property to become abandoned property, there must be an actual relinquishment (*O'Connor v. Maryland Motor Car Ins. Co.,* 287 Ill. 204, 208; *Brink's Chicago City Express Co. v. Hunter,* 156 Ill. App. 537).

We have reviewed the matters herein set forth primarily for the purpose of attempting to clarify the nature of the gas which plaintiff seeks to use for domestic purposes, and the method by which such gas is taken, considered in the light of the lease between the parties.

It seems to us, however, that a determination of the basic question of whether or not injunctive relief should be granted in the instant case may likewise be disposed of by consideration of the basic principle that an injunction should not be allowed to enforce the terms of a contract where such contract is not definite or certain (*Cleveland v. Martin,* 218 Ill. 73, 89; *Streator Independent Telephone & Telegraph Co. v. Interstate Independ-*

*ent Telephone & Telegraph Co.,* 142 Ill. App. 183, 193). There is no contention that plaintiff has any specific right based on the contract, and the contentions which are referred to in this opinion, based on implication, or the further contention that the gas is being abandoned, certainly do not, under the facts, create a case for injunctive relief. Even if the plaintiff had the right to require defendant to utilize the casinghead gas in question, there would be no right to the exercise of self-help such as was undertaken by the lessor in the instant case. As stated in *Summers Oil & Gas,* page 403, sec. 432,

''On sound legal theory there seems to be no place for the doctrine of self-help as a remedy for breach of the lessee's express and implied duties to test and develop the land and protect it from drainage, for by the lease the lessee acquires privileges to drill wells on the land and market the product and rights that all others, including the lessor, shall not do so. It is true that the lessee has duties to exercise these privileges and that the lessor has rights that he exercise them, but a failure to do so does not change the legal relations created by the lease. Any drilling by the lessor upon the demised lands is a violation of the rights of the lessee.''

Under the terms of the lease defendant had the exclusive right to develop the premises and produce oil and gas from them. The lessor had no right to use the gas, unless his rights to the use of gas came within the express terms of the lease (*Mid-South Oil Co. v. Cochran,* 238 Ky: 737, 38 S. W. (2d) 687). As we have pointed out in this opinion, the only provision for the use of gas for such purposes is contained in the reference to gas produced from wells where gas only is found.

We must, therefore, conclude that the allegations of the complaint, as amended, fail to state any cause of action, or to show that plaintiff is entitled to the injunctive relief prayed for in this cause. The motion to dissolve the temporary injunction and the motion to dismiss the

complaint should, therefore, have been allowed. This cause will, therefore, be reversed and remanded to the circuit court of Wabash county, with directions to proceed with this action in accordance with the views herein expressed.

*Reversed and remanded, with directions.*