CRANSTON *v.* MILLER.

4-7525                                      185 S. W. 2d 920

Opinion delivered February 5, 1945.

*A. D. Pope* and *Claude E. Love,* for appellant.

*Wayne Jewell,* for appellee.

McHANEY, J. Appellant is the owner of certain lands in what is known as the East Field of Union county, Arkansas, on which are two oil wells which are now producing a small amount of crude oil. The original lease of the lands for oil and gas was executed in 1921 by appellant to a Mrs. Blank, and appellee Miller is now the owner of said leasehold by *mesne* conveyances by way of assignments. It appears that the Magnolia Oil Company operated the wells for a period of years and then abandoned them and assigned the lease back to appellant's son who assigned same to Patterson and he executed to appellant an assignment of an overriding 1/16 royalty interest therein. Patterson operated the wells for a time, then assigned to Pesses, Seigel, *et al.,* who assigned to appellee. The original lease of 1921 contained three provisions, as follows: ''In consideration of the premises the lessee covenants and agrees: 1st. To deliver to the credit of the lessor, free of cost, in the pipe line to which he may connect his wells, the equal one-eighth part of all oil produced and saved from said premises. 2nd. To pay lessor one-eighth part of the gas from each well where gas only is found, while the same is being used off the premises, and lessor to have gas free from any such well for all stove and inside

lights in the principal dwelling house on said land during the same time by making his own connections with the wells at his own risk and expense. 3rd. To pay lessor for gas produced from any oil well and used off the premises at the rate of one hundred ($100) dollars per year, for the time during which said gas shall be used, said payments to be made each three months in advance.''

Exactly similar provisions were contained in the assignment of overriding royalty interest from Patterson to appellant which subsequent assignees took subject to including appellee.

During the time the Magnolia Oil Company and all other assignees, except appellee, operated the wells, free gas was furnished to appellant, he having constructed his own gas line from the wells to his residence. Appellee permitted appellant to have free gas from the date he took over, June 22, 1943, to December 26, 1943, when he disconnected appellant's gas line which appellant reconnected and finally on January 6, 1944, appellee again disconnected it and plugged it so as to deprive appellant of gas for his residence.

Shortly thereafter appellant brought this action to require appellee to reconnect said gas line and to furnish free gas, and to require appellee to put under ground a line of pumping rods or shackle rods running across appellant's field and used in the operation of said wells. Trial resulted in a decree dismissing appellant's complaint for want of equity, and this appeal followed.

The primary question presented for decision is whether appellant is entitled to free gas, under his lease which provides that the lessee shall pay the lessor one-eighth part of gas from each well where gas alone is found, while same is being used off the premises, ''and lessor to have gas free from any such well,'' as set out above, and under the clause in his overriding royalty contract which provided that he, lessor, should be paid the one-sixteenth of the gross proceeds ''for gas from each well where gas only is found—for all gas used off the premises,'' and that he was ''to take gas free of cost

from any such well," etc. Two conditions are attached to the right of appellant to have free gas in each of said instruments: 1st, it must come from a well where gas only is found, and 2nd, the gas so found in a gas well only must be used off the premises. Neither of these conditions exists in this case. Neither of the two wells on appellant's lands is a well "where gas alone is found." Both are oil wells and have been since they were drilled and have at all times been operated for the oil produced and not for gas. It is conceded that neither well produces gas in commercial quantities and the output of gas of both combined is not sufficient for commercial use. It is also established, if not conceded, that the gas from said wells is not "used off the premises."

Appellant says that we held, in the recent case of *McLeon* v. *Wells*, 207 Ark. 303, 180 S. W. 2d 325, in construing the language used in an 88 form, Oil and Gas Lease, "that gas produced from oil wells as well as from 'gas wells only' could be used free of cost by the grantor." Conceding that such was the effect of our holding in that case it was justified and required by the language used in the second paragraph in that lease, relating to the covenants of the lessee, which provided: "To pay the lessor ⅛th of the market value at the well for all gas produced from any oil well or gas well on said premises when such gas is sold or used off the premises, lessor to have gas free of cost from any such well for all stoves," etc. So it will be seen that the provisions in the two leases with reference to payment for gas and the furnishing of free gas are radically different. In the case at bar the free gas must come from a well "where gas alone is found," while in the *McLeon* v. *Wells* case it must come "from any oil well or gas well." But such was not the effect of our holding in the cited case. The issue there decided was the right of the lessor to deprive the lessee of his equipment and personal property located on the leased premises, and the question of his right to free gas was not involved. We conclude that appellant has no right to free gas under the instruments

here involved. See *Hein* v. *Shell Oil Co.*, 315 Ill. App. 297, 42 N. E. 2d 949.

Another contention of appellant is that, since all the operators of the lease had furnished him free gas running over a period of 22 years, this amounted to a construction of the lease by the parties themselves that he was entitled to free gas under the terms of the contract and estops appellee from cutting off his gas. But practically all the witnesses, including Patterson, called by appellant, testified there was no obligation in the instrument under which they operated to furnish gas to appellant, and that they furnished it by agreement as an accommodation to him, or "it was just a matter of permission on my part," said witness, L. Pesses, who also testified: "We were buying gas from the Arkansas-Louisiana for our operations (on this lease) and our bill was around $20 per month." Witness Seigel testified it was necessary to purchase gas to operate the lease, and that the monthly bill was from $20 to $60 per month, and that there was not enough gas to operate the lease and furnish appellant gas. It appears that the preponderance of the evidence is that the wells did not furnish enough gas to operate the lease and furnish appellant gas too, and that the furnishing of gas to him was by oral agreement independent of the written instruments, which was not binding upon appellee, even though he permitted appellant to have gas for a few months before cutting him off. In other words, the action of prior operators of the lease in furnishing appellant gas was not binding on him. Moreover, the lease is unambiguous, and it is not necessary to consider the construction placed on it by the parties.

It is finally argued by appellant that the shackle rods across his land and used to pump the wells should be buried in the ground below plow depth. These shackle rods are a long string of connecting rods running from the power house to a distant well, whereby it is pumped by remote control. This contention is made under a provision in the lease that the lessee shall bury all pipe lines below plow level. It makes no provision about

shackle rods, and it appears they could not be operated if buried in the ground. The proof shows that without them it would be necessary to install a standard rig at a cost of about $1,500 which would be prohibitive, or else abandon the lease. The provision relied on does not require appellee to bury the shackle rods.

.The decree is correct and is accordingly affirmed.