SINCLAIR OIL & GAS COMPANY, Plaintiff in Error,

v.

Pink HUFFMAN, Defendant in Error.

No. 39544.

Supreme Court of Oklahoma.

Nov. 28, 1962.

Angus A. Davidson, Ted D. Foster, Jr., Tulsa, for plaintiff in error.

Richard S. Roberts, Wewoka, for defendant in error.

O. Gordon Oldham, Elmer. W. Adams, George H. Bowen, Glenn R. Davis, Fred W. File, Cecil H. Frey, Howard H. Harris, W. W. Heard, Hawley C. Kerr, William F. Latting, William B. Nance, William C. Phelps, Warren M. Sparks, Robert J. Stanton, Phillip R. Wimbish, Tulsa, Robert E. Gill, Jr., Norton Standeven, John W. Wolfe, Oklahoma City, Cecil C. Cammack, Gentry Lee, Robert O. Mason, Lloyd G. Minter, R. M. Williams, Wm. J. Zeman, Bartlesville, Nathan Scarritt, Enid, Wayne S. Smith, Dallas, Tex., amici curiæ (on rehearing).

JOHNSON, Justice.

The parties, who appear here in the same relative position as in the trial court, will be referred to herein as they appeared in said court.

In October, 1928, Robert Caesar executed an oil and gas lease covering the NE/4, NW/4, Sec. 29, T. 6N, R. 6E, Seminole County, Oklahoma. The lease was subsequently assigned to plaintiff. A test well for oil and gas was completed as an

oil well (hereafter referred to as "well") on the 40 acres (hereafter referred to as "land") several years ago. The well has at all times produced casinghead gas. Plaintiff has operated this well for a long period. This clause appeared in the lease:

"2nd. To pay lessor one-eighth (⅛) of the gross proceeds each year, payable quarterly, for the gas from each well where gas only is found, while the same is being used off the premises, and if used in the manufacture of gasoline a royalty of one-eighth (⅛), payable monthly at the prevailing market rate for gas; and lessor to have gas free of cost from any such well for all stoves and all inside lights in the principal dwelling on said land during the same time, by making lessor's own connection with the well at lessor's own risk and expense."

For the past several years plaintiff has operated a gas products plant in or near the oil field in which the well is located. It has gathered casinghead gas from the well and other oil wells in the area and has flowed same to its plant. Gasoline, residue gas and other properties have there been extracted. The residue gas and a small amount of gas that plaintiff acquired from other sources has been flowed back to the wells from which casinghead gas was taken for use as fuel in motors used in pumping oil. For several years preceding date of trial, the volume of residue gas returned to the well has about equaled the volume of casinghead gas produced therefrom.

In 1954 defendant acquired the surface only of a portion of the land. He at no time has owned any of the minerals underlying the land. He thereafter sold a portion of the land to Billy Raines and others. As of date of trial he owned 9½ acres of land. The well and tanks used in connection therewith are on the 9½ acres.

The defendant, shortly after acquiring title to the surface, made a connection with the residue gas line of the plaintiff and for a period of approximately four years used this gas for domestic purposes. The plaintiff first learned of this connection in 1958 and removed the same. The defendant reconnected it a number of times following removal by plaintiff. This suit was begun by plaintiff July 27, 1960, and was tried by agreement August 29, 1960. From a judgment for defendant, this appeal is prosecuted.

The basis of the trial court's judgment is summarized in the following quotations from the journal entry of judgment:

"4. THE COURT FURTHER FINDS that numerical paragraph 3 of the said oil and gas mining lease under which Sinclair is producing said property provides for a royalty to the lessor for gas from an oil well and used off the premises; however, neither said paragraph nor said contract makes provision, and is uncertain and indefinite as to the use of gas from an oil well for domestic purposes at the principal dwelling and should therefore be construed by this court.

"5. THE COURT FURTHER FINDS that the parties hereto have, by their acts and conducts, so construed and interpreted said contract to provide the principal dwelling with gas for domestic purposes from gas produced from an oil well and such action and conduct of the parties has placed, and places a practical construction upon such contract and the clause in question, which construction is controlling upon this case and the issues herein."

Two contentions are made by defendant:

1. That the lease provision is indefinite and uncertain.

2. That there are circumstances from which it ought to be inferred that some construction of the contract by the parties was implied.

We come to the first contention posed, supra. The lease provision quoted, supra, is the only contract dealing with the point in controversy. It will be noted that the first part of such paragraph dealing with the payment of royalty contains the words

"where gas only is found." The latter portion of the paragraph contains the provision "to have gas free of cost from *any such well* \* \* \*." Does the first quotation limit the second because of the reference to "any such well"? Does it mean that free gas is to be given from a well producing only gas?

We do not believe there is anything ambiguous, uncertain or vague about the provisions of the lease. All of the pertinent language is incorporated in one paragraph, and obviously the "free gas" provision is limited to wells producing "gas only." In our judgment, no other construction is possible. Neither is the decision in Sheridan Oil Company v. Cunningham, 186 Okl. 618, 99 P.2d 497, of any help in resolving the difficulty. In that case, a twenty-year use had placed a construction upon the contract.

The gas from this well, being casinghead gas, had to be processed before being ready for domestic use. We are convinced and hold that the quoted provision from the lease did not entitle the surface owner to the use of "free gas" under the circumstances of this case.

The only cases which we have found hold that under such a lease casinghead gas is not embraced in the term "free gas."

. In the case of Weaver v. Graham et al., 109 Kan. 450, 199 P. 924, the first paragraph of the syllabus reads:

> "An oil and gas lease provided: 'If gas be found in any well or wells first party [the lessor] is to have on demand sufficient gas for domestic purposes on said premises free; the said second party [the lessee] is to have the remainder together with all gas from oil wells.' It is held, that under this provision the lessor was not entitled to be supplied with gas otherwise than from producing gas wells—that no obligation to supply him with gas arose from its being found in oil wells."

See also Hein v. Shell Oil Co., 315 Ill. App. 297, 42 N.E.2d 949.

Again, in the only authority which we have located, it is held that the limitation in the "free gas" provision that the gas must come from a well "where gas only is found" does not require the furnishing of gas from an oil well. See Cranston v. Miller, 208 Ark. 156, 185 S.W.2d 920, wherein the first and second paragraphs of the syllabus read:

> "Where oil and gas lease required lessee to furnish lessor with free gas if gas came from a well where gas alone was found and gas so found was used off the premises, and well on premises produced oil primarily, did not produce gas in commercial quantities and gas produced was not used off premises, lessee was not obligated to furnish lessor with free gas.

> "Where, under terms of oil and gas lease, lessor was not entitled to free gas because well did not produce gas alone or in commercial quantities, the furnishing to lessor of free gas by successive lessees as a matter of accommodation did not amount to a construction of the lease by the parties that lessor was entitled to free gas so as to estop current lessee from cutting off lessor's gas."

Admittedly, this gas was from an oil well. We are therefore of the opinion and hold that the defendant was not entitled to free gas under the facts of this case.

The contract not being ambiguous, uncertain or indefinite, it is not subject to construction by act of the parties. As said in United States v. Mann (Okl.), 10 Cir., 197 F.2d 39, in the first paragraph of the syllabus:

> "Where the language of a contract is clear and unambiguous and lends itself to only one construction, extraneous evidence and circumstances, as well as the conduct of the parties with relation to the contract, are inadmissible in determining legal effect thereof."

Further, the period of time which the Hoffman connection continued after knowl-

edge by Sinclair was so short that no construction of the contract could be implied therefrom.

Judgment reversed with directions to enjoin the defendant as prayed in the petition.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and HALLEY, JACKSON and IRWIN, JJ., concur.