[Civ. No. 2751.  Second Appellate District, Division One.—March 6, 1920.]

## A. C. RAMIREZ, Respondent, v. UNITED FIREMEN'S INSURANCE COMPANY OF PHILADELPHIA (a Corporation), et al., Appellants.

[1] FIRE INSURANCE — VENDEE IN POSSESSION — SOLE AND UNCONDITIONAL OWNERSHIP—CONSTRUCTION OF POLICY.—Where the vendee, under a contract to purchase certain real property for a specified sum, pays a given sum down and obligates himself to pay the balance in given monthly installments and takes possession, and the vendor obligates himself, upon the completion of such payments, to convey the property to the vendee, such vendee is the unconditional and sole owner of the property within the meaning of a policy of fire insurance that· "This entire policy shall be void, . . . if the interest of the insured be other than unconditional and sole. ownership."

[2] ID.—SUBSEQUENT EXECUTION OF FORMAL CONTRACT — EFFECT ON RIGHTS OF INSURED.—The fact that, owing to the informal character of the contract of purchase under which the vendee was in possession at the time of issuance of the policy of fire insurance, the vendor and the vendee, at a later date, entered into a more formal and complete contract in reference to the sale, in no wise detracted from the legal effect of the first contract under which the mutual obligations were assumed by the parties.

[3] ID.—PRELIMINARY PROOF OF LOSS—WAIVER BY INSURER—EVIDENCE —FINDING—APPEAL.—Where the question of the waiver of a provision of a policy of fire insurance requiring the insured to render to the insurer, within a given number of days after the commencement of the fire, a proof of loss, containing certain specified data, is involved, an appellate court should not, in order to reverse the judgment, scan too closely the evidence upon which the trial court refused to declare a technical forfeiture. This is especially true where, as in the instant case, the insured, due to the acts and conduct of the insurers and their agents in assuming a duty toward him not devolving upon them, was thereby led to believe they had directed his attention to the doing of all that was , required to entitle him to compensation for the loss sustained.

APPEAL from a judgment of the Superior Court of San Bernardino County. J. W. Curtis, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. W. Hindman for Appellants.

A. S. Maloney and Fred A. Wilson for Respondent.

SHAW, J.—On June 16 and 17, 1915, the defendant United Firemen's Insurance Company of Philadelphia issued to plaintiff two policies of fire insurance, one in the sum of $350 upon his dwelling-house, and one for one thousand dollars on the furniture therein. Thereafter, by a contract of reinsurance, the defendant British America Assurance Company entered into a contract whereby it assumed the obligations of said first-named company. Nearly two years thereafter, to wit, May 2, 1917, the house and contents were destroyed by fire, and in an action brought by plaintiff upon the policies, judgment was rendered in his favor for one thousand dollars, from which defendants appeal.

Appellants base their position upon two clauses of the policy; one relating to the title of the insured, and the other to the furnishing by him of sworn proofs of loss within a certain time.

[1] The policy contained, among other provisions, the following: "This entire policy shall be void, . . . if the interest of the insured be other than unconditional and sole ownership." Following the allegation of the complaint, the court found "that at the time of the issuance of said policies of insurance the plaintiff was, and continuously thereafter up to the time of the destruction thereof by fire on the second day of May, 1917," was the unconditional and sole owner of the property insured. This finding is attacked upon the ground that the evidence is insufficient to support the same. While there is some conflict in the testimony, it appears from that produced by plaintiff that, while not the record owner of the property, he was at the time of the issuance of the policies in possession thereof under a contract to purchase the same upon monthly payments therefor, which agreement or contract was entered into and possession of the property taken prior to the issuance of the policies. This agreement was destroyed in the fire, but plaintiff's testimony tends to show that under the memorandum he entered into possession of the property and was thereby obligated to pay $1,150 for the same, $50 of which

was paid in cash and the remainder thereof to be paid at the rate of $10 per month, in consideration of which the vendor obligated himself, upon the completion of such payments, to convey the property to plaintiff.   [2]   The fact that, owing to its informal character, the vendor and vendee, at a later date, entered into a more formal and complete contract in reference to the sale, in no wise detracts from the legal effect of the first contract under which, as appears from plaintiff's testimony, such mutual obligations were assumed by the parties, and, upon the authority of *McCollough* v. *Home Ins. Co.*, 155 Cal. 659, [18 Ann. Cas. 862, 102 Pac. 814], and cases there cited, this must be deemed sufficient to justify the finding of the court that there was no breach of the condition of ownership of the property in plaintiff.

The policies contained a provision that ''within sixty days after the commencement of the fire the insured shall render to the company at its main office in California named herein preliminary proof of loss consisting of a written statement signed and sworn to by him setting forth: (a) his knowledge and belief as to the origin of the fire; (b) the interest of the insured and of all others in the property.'' This condition was not complied with, but the court found, in substance, that defendants, and each of them, had actual knowledge and notice of said loss and actual knowledge of the extent thereof, and that defendants and their agents, by reason of their conduct and statements to plaintiff, misled him as to the necessity of furnishing such proofs, and their acts, statements, and conduct constituted a waiver of the performance by plaintiff of the condition of said policies as to the making of such proofs. These findings are likewise attacked upon the ground of insufficiency of the evidence to support them. The evidence bearing upon this issue shows that immediately after the fire plaintiff saw Mr. Poole, the agent through whom he had procured the insurance policies, and had a conversation with him in regard to the giving of notice and making of proof, wherein Poole told him ''the company had by law sixty days, and he said, 'You will hear from them,' '' and that Poole said he would attend to giving the notice; and in response to the question, ''Did you rely upon him to inform the company?'' answered, ''I did; I relied upon him all the time.'' Mr.

Poole did notify the company of the loss, in response to which Mr. Cote, the company's adjuster, appeared on the scene two or three days after the fire, and ascertaining that the result of the fire was a total loss of the property, drew a plan of the rooms in the house and told plaintiff to list the articles in each room, with the value thereof, and give it to him or send it to the company, with which demand plaintiff, after making the inventory in the manner required by the adjuster, complied. Thereafter the adjuster met plaintiff while he was engaged in driving a delivery wagon and presented to him a document which, upon representation that it was necessary that he sign it in order "to get this thing straightened up, fire insurance straightened up," he signed. Thereupon Mr. Cote left and plaintiff did not see him again. This paper which plaintiff signed was a stipulation to the effect that no step or measure taken and no act of the company or its agents should be deemed a waiver upon the part of the company of any of the conditions of the policies, unless the same were waived in writing by the president of the company. This agreement has no bearing upon the question before us. It has no reference to representations, acts, or conduct of the company or its agents calculated to lead the insured into the belief that such proofs were not required; indeed, to so hold would be in effect to sustain what might be the very means of accomplishing an intentional fraud upon plaintiff. In Joyce on Insurance, volume 5, section 3354, it is said: "The general rule seems to be, however, that any act or series of acts upon the part of the insurer which tend to create a belief in the mind of the claimant under the policy that notice need not be given, or that proofs of loss will be unnecessary, will operate as a waiver, and release such claimant from a compliance with the provision." And in Cooley's Briefs on Insurance, volume 4, page 3526, it is said: "If the company investigates the loss on its own account, and so conducts itself with relation thereto as to show a satisfaction with the knowledge thus obtained, or to induce reasonable belief in insured that it is so satisfied, and does not desire formal notice or proofs, it will amount to a waiver of such formalities." To the same effect see *Aetna Ins. Co.* v. *Shryer et al.,* 85 Ind. 364; *Massock* v. *Royal Ins. Co.,* 196 Ill. App. 394; and *Sidebotham* v. *Merchants' Fire Assn.,* 41 Wash. 436, [83 Pac.

1028]. That the statement of the insurance agent to the effect that he would attend to the matter of giving notice to the company, followed a few days thereafter by the appearance of the adjuster, who instructed plaintiff as to the making of a plat of the rooms and directed him to make out an inventory showing the articles in each room, together with the value thereof, and to either give it to him or send it to the company, with which demand plaintiff complied, was well calculated to and did lead him to believe that a settlement would be made without further notice or proof, there can be no doubt; indeed, it is a fair inference that such was the purpose of the adjuster. The subsequent act of the adjuster in having plaintiff sign the stipulation, the words of which he says he did not understand, upon the representation that it was an act necessary in effecting the settlement, led him to believe that the company was demanding all that he was to do in order to obtain compensation for the loss of his property. Thus misled, he took no further steps until the expiration of the sixty days, when, hearing nothing further from the company, he wrote them, in response to which letter Mr. Cote, the adjuster, tersely stated that the "company denies all liability under the policies."

[3] Where the question of the waiver of such provision is involved, an appellate court should not, in order to reverse the judgment, scan too closely the evidence upon which the trial court refused to declare a technical forfeiture. This is especially true where, as in the instant case, the plaintiff, due to the acts and conduct of defendants and their agents in assuming a duty toward him not devolving upon them, was thereby led to believe they had directed his attention to the doing of all that was required to entitle him to compensation for the loss sustained.

The judgment is affirmed.

Conrey, P. J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 3, 1920.

All the Justices concurred, except Shaw, J., who was absent.