[Civ. No. 3790.   Third Appellate District.—March 16, 1931.]

L. S. FRANCIS et al., Respondents, v. IOWA NATIONAL FIRE INSURANCE CO. OF DES MOINES (a Corporation), Appellant.

Robert M. Pease and Roy P. Dolley for Appellant.

Griffin & Boone and Edward T. Taylor for Respondents.

MR. JUSTICE THOMPSON (R. L.) DELIVERED THE OPINION OF THE COURT.—This is an appeal from a judgment for compensation of loss by fire which judgment was rendered pursuant to the terms of an insurance policy. It is claimed liability under this policy was waived by the insured by failure on his part to supply the company with sworn proof of loss as required by the contract.

The plaintiff Western owned a store building, together with fixtures and stock of merchandise at Ceres. The merchandise was subject to a chattel mortgage to secure the loan of $2,000 which was held by the plaintiff Francis.

Except for this mortgage, Francis had no interest in the property. Russell & Robbins are insurance brokers who maintain their office at Modesto. They were agents in Stanislaus County for the defendant Iowa National Fire Insurance Company of Des Moines. The defendant admits this agency but denies they had authority to adjust claims of loss in behalf of the company, or to waive the furnishing of proof of loss by the insured as required by the terms of the policy.

December 29, 1926, the agent Russell visited the store of plaintiff Western and took his application for $1500 insurance on the fixtures and stock of merchandise. The agent then had full knowledge of the existence of the chattel mortgage. The following morning the policy was duly issued insuring the stock and fixtures of plaintiff Western for $1500 in the Iowa National Fire Insurance Company. At noon on December 30th, the agent, Russell, delivered the policy to Western and collected the balance of the premium amounting to $32.63. In the meantime, following the acceptance of the insurance, a fire occurred during the night which entirely destroyed the building, fixtures and stock of merchandise. Notice of the loss by fire was promptly given to the agents Russell & Robbins. Russell sent a telegram to R. H. Jenkins, general agent of the defendant insurance company, at his office in Los Angeles. The message read:

"Modesto, Calif., Dec. 30, 26

"R. H. Jenkins
    "A. G. Bartlett Bldg.
        "Los Angeles, Calif.

"Wrote Pol. No. 616522 yesterday and store burned at four A. M. today. Two parties not interested in [it] in jail for setting fire. Suggest you send adjuster Wm. Brown, Stockton, Clark Hotel for adjustment. Would appreciate quick settlement.

"(Signed) R."

To this wire, Jenkins replied: "Adjuster Fargo of this city leaving for Modesto tonight." On the morning of December 30th, Russell & Robbins forwarded to Jenkins a complete report of the issuing of the insurance policy to Western. A few days later they sent Jenkins their check for

$32.63 in payment of the premium on the policy. On January 4th this check was returned to Russell & Robbins with a letter containing the following paragraph:

"This morning in checking over the slips that came in with the numerous checks from various agencies, she [the clerk] finds a memorandum that this check paid for policy No. 616522 in which P. G. Western is named as the assured. As we are not at the present time in a position to either admit or deny liability under this particular policy, we cannot at this time accept payment of the premium and *you are instructed to return same forthwith to the assured.*"

Mr. Russell informed the insured that his check in payment of the premium had been returned by the general agent. The check, however, was not delivered to the insured. To the question which was propounded to Mr. Western, "Did you ever know that Mr. Russell had received a return check from Mr. Jenkins' office?", he replied, "Yes, he told me that he had received it." Russell constantly encouraged the claimant to believe that the insurance company would adjust and pay the loss which resulted from the fire. Mr. Russell promptly wrote the general agent, Jenkins, saying he did not intend to return the premium to the insured; that the contract of insurance was legitimate and binding and "if we have to expect the Iowa National to renege on us on this loss, we wish to know at once, so we will know how to proceed with this agency in the future, but in this loss, we must stand back of Mr. Western and Mr. Francis as they are innocent parties in this loss. . . . We will not return the check to Mr. Western as this claim must be settled." To this letter the general agent replied as follows:

"February 7, 1927.

"Messrs. Russell & Robbins,
    "1103 I Street,
       "Modesto, California.

Re policy #616522—Western.

"Gentlemen:

"As the above numbered policy was issued after the loss and there was no agreement between you and Mr. Western as to which company this policy should be issued in, we are, at the present time having the matter further investigated.

"Also as I have informed you before, you have violated the companies' instructions in issuing a policy on a stock encumbered by a chattel mortgage, and we feel certain that if the company should have been called upon to pay this claim they would have looked to you for reimbursement."

The adjuster, Fargo, visited the premises on December 31, 1926. He interviewed the plaintiff Western, who then furnished him with a complete list of the property which was destroyed by the fire, together with his valuation of the various items thereof. After this written statement had been completed, the adjuster left. Mr. Western testified that the adjuster then said "that was all that he wanted with me, and that I would hear from him in a few days". The insured heard nothing further directly from Fargo, the adjuster, or from the general agent of the defendant company. No sworn proof of loss was furnished to the company by the insured. Western claims to have been induced to believe, from the conduct and declarations of the agents of the insurance company that the filing of this sworn proof of loss was waived. He testified, in addition to the foregoing conduct and statement of the adjuster, that Russell frequently said "he would take care of it [the collection of the insurance] for me, whatever was necessary, and I left it up to him to take care of". He further testified that he visited the office of Russell & Robbins thirty days after the fire, and stated that "I asked if there was anything else to file, or to sign, and he [Russell] said there was not, that he had taken care of everything. . . . Q. At that time Mr. Russell said he had taken care of everything necessary? A. Yes sir. Q. To collect the money from the insurance company? A. Yes sir." These statements were also corroborated by Mr. Francis. At the trial, Mr. Russell frankly admitted the foregoing facts, and said with respect to his failure to file the proof of loss, or to notify the insured that the company denied its liability under the policy, "I told them [the insured] at different times, especially Mr. Francis, . . . I didn't think it was necessary for us to make a sworn affidavit and file a proof of loss at that time. . . . Q. Now, you knew that a second notice, or a notice of proof of loss was due then in 60 days, did you not, after the fire? A. Well, not under these circumstances, no sir."

No part of the insurance was paid by the company. In April, 1927, this suit upon the policy was commenced. The defendant answered the complaint controverting| all the material allegations thereof. The answer denies that the insurance policy was ever issued or authorized by the company, or that it was obligated to pay any sum of money thereunder. As separate defenses, the answer also alleges the policy is void because it was issued in violation of the provision therein contained that "this company shall not be liable for loss or damage to any property insured hereunder while encumbered by a chattel mortgage". It further asserts that all claim for compensation for loss by fire is forfeited by the insured because of his failure to file a sworn proof of loss within sixty days after the fire occurred, as required by the terms of the contract.

Findings favorable to the plaintiffs were adopted by the court upon all material issues. A judgment for $1500 and accrued interest, aggregating the sum of $1635.63 was accordingly rendered in favor of the plaintiffs. From this judgment an appeal was perfected.

For reversal, the appellant relies solely on its contention that the insured forfeited all claims for reimbursement under the insurance policy by failure to furnish the company with sworn proof of loss within sixty days of the time when the fire occurred. It is asserted the conduct of Jenkins, the adjuster, acting in behalf of the company, did not amount to a waiver of the clause of the policy requiring the proof of loss to be furnished. It is further claimed the insurance brokers, Russell & Robbins, were merely local or special agents without authority to waive the filing of this proof of loss.

There is ample evidence in the record to support the finding that the insurance policy was duly executed by authority of the defendant, and that the clause in the policy which exempts the company from liability when the insured property is found to be encumbered by mortgage, was waived, since the agent had full prior knowledge of the chattel mortgage and full power to accept risks and issue policies for fire insurance. It is unnecessary to cite authorities or further elaborate on these issues since the appellant is urging neither of them as a ground of reversal.

■ The provision of the policy requiring sworn proof of loss to be furnished within sixty days after the fire occurred was waived by the insurer for three reasons. (1) The course of conduct and declarations of the agents of the defendant led the insured to believe this requirement was waived; (2) The company denied all liability under the policy before the expiration of the sixty-day period for filing proof of loss; (3) The company promptly sent its adjuster to interview the insured and procured from him complete information concerning all property which was destroyed by fire together with detailed valuation thereof.

■ The obvious purpose of adopting the clause of a fire insurance policy requiring the furnishing of sworn proof of loss within a limited time after the fire occurs is to protect the insurer against fraudulent claims. There is no statutory provision requiring such notice to be furnished. In the absence of fraud on the part of an insured, a court should carefully examine the evidence regarding the failure to furnish proof of loss by fire so as to avoid a forfeiture of legitimate claims merely because of technical omissions. (*Ramirez* v. *United Firemen's Ins. Co.*, 46 Cal. App. 451, 455 [189 Pac. 309].)

The insured is charged with no fraud in the present case. The company was informed of the fire the very day it occurred. An adjuster was promptly sent to investigate the origin and result of the fire. He interviewed the insured and secured from him a detailed statement of the property which was burned and its valuation. The adjuster left, saying to the insured, "that is all I want of you; you will hear from me in a few days". Having given to the adjuster a detailed statement of his claim of loss, it is not unreasonable to assume the insured believed no further proof of loss would be required. Neither the adjuster nor the company directly communicated with the insured after taking this data. No complaint was made regarding the property which the insured claimed to have lost, nor its reported valuation. Moreover the defendant's local agents, Russell & Robbins, who had the apparent authority to represent the company as general agents, with the exception of adjusting losses, specifically assured the plaintiff Western they would do everything necessary to collect his insurance. Russell told him there was nothing further

required of him to do or sign. Clearly this deceived the insured into believing the furnishing of the sworn proof of loss was waived. Silence on the part of the defendant regarding his intentions undoubtedly helped to deceive the insured. ▓ Under the circumstances of this case, having determined to repudiate its obligations under the policy on all grounds, the defendant should have notified the insured so that he could protect himself by conforming literally to the terms of the contract regarding this proof of loss. This omission may reasonably be attributed to the negligence and fault of the defendant and its agents. Section 2636 of the Civil Code provides that:

"Delay in the presentation to an insurer of notice or proof of loss is waived, *if caused by any act of his,* or if he omits to make objection promptly and specifically upon that ground."

The appellant, however, contends the conduct and declarations of the adjuster were insufficient to constitute a waiver of this provision of the policy and that the insured admitted he did not rely on the adjuster's acts or declarations. Very likely the insured did rely chiefly on the assurance of the agent Russell that he would look after the collection of the claim, but certainly his belief that no further proof of loss or notice was required was greatly strengthened by the conduct of the adjuster.

The appellant seeks to escape from the responsibility of the declarations made by Russell on the ground that he was a mere special agent with no power to adjust claims and consequently with no authority to waive the provisions of the policy respecting the proof of loss. There is no evidence that the insured knew the agent Russell had no authority to waive this provision of the policy. Apparently Russell had all the authority of a general agent to bind the company which he represented, except the power to adjust claims. ▓ A general agent of a fire insurance company who has power to contract for and bind the company in the conduct of its business, has the authority to waive the clause of a policy requiring sworn proof of loss. The authorities are fairly uniform to the effect that an agent who has the power to adjust losses sustained by fire, may also waive the furnishing of written proof of loss. (26 C. J. 393, sec. 507; 33 C. J. 23, sec. 680; 7 Cooley's Briefs on

Insurance, 2d ed., p. 5955, sec. 12, a.) A number of reputable authorities are cited by the appellant from other jurisdictions which hold that an agent who has no authority to adjust losses has no power to waive the terms of the contract. (*Hottner* v. *Fire Ins. Co.*, 31 Pa. Super. Ct. 461; *Bush* v. *Westchester Fire Ins. Co.*, 63 N. Y. 531; *Ermentrout* v. *Girard Fire & Marine Ins. Co. of Philadelphia*, 63 Minn. 305 [56 Am. St. Rep. 481, 30 L. R. A. 346, 65 N. W. 635].) By the great weight of authority, however, the right to adjust claims is not necessarily the test as to the power to waive the furnishing of proof of loss. (7 Cooley's Briefs on Insurance, 2d ed., p. 5966, sec. 12, e; 26 C. J. 393, sec. 507.) And it is said in the authority last cited:

"If an agent has *apparent* authority to waive notice or proofs, the insurer is bound by his act in doing so, regardless of his actual authority."

In the present case it appears the agents Russell & Robbins had all the powers of a general agent to bind the company except the authority to adjust claims. We are satisfied the combined acts and declarations of the defendant and its agents Jenkins and Russell had the effect of waiving the furnishing of sworn proof of loss.

The insurance company waived the provision of the policy requiring sworn proof of loss to be furnished by denying its liability. In *Lee* v. *United States Fire Ins. Co.*, 55 Cal. App. 391, 396 [203 Pac. 774, 776], it is said:

"The denial of such liability prior to the expiration of the time to make proof of loss is a waiver of the condition of the policy requiring such proof. (*Farnum* v. *Phoenix Ins. Co.*, 83 Cal. 263 [17 Am. St. Rep. 233, 23 Pac. 869]; *Royal Ins. Co.* v. *Martin*, 192 U. S. 149 [48 L. Ed. 385, 24 Sup. Ct. Rep. 247, see, also, Rose's U. S. Notes].)"

To the same effect are the following authorities: 7 Cooley's Briefs on Insurance, 2d ed., page 6019, section 14, a; 26 C. J. 406, section 522; 33 C. J. 32, section 694; 5 Joyce on Insurance, 2d ed., page 5592, section 3373. In the last cited authority, at page 5564, section 3354, it is said: "The question concerning whether or not there has been a waiver of this provision must in all cases depend upon the circumstances of each particular case. The courts will construe this provision, as a rule, against the insurer, and will not

scan very closely evidence introduced by the insured tending to rebut a technical forfeiture."

From the evidence in the present case, it must be assumed the company at all times intended to repudiate its liability under the policy. This is the effect of its correspondence with the local agents. This purpose must be inferred from its general conduct. The defendant promptly returned to its agents the plaintiff's check for the payment of his premium on the policy, saying: "You are instructed to return same forthwith to the insured." It is true that the defendant also said in this letter: "We are not at the present time in a position to either admit or deny liability under this particular policy." Good faith on the part of the company in making this statement was a matter for the court to determine. We do not impute bad faith on the part of the defendant. But if the company had determined to repudiate the obligations of the policy, and anticipated the insured might neglect to file his proof of loss, in view of the foregoing well-established principle of law, a possible defense to an action on the policy might be saved by failure on the part of the insurer to definitely deny its liability. The defendant's subsequent conduct indicates that it had definitely determined to deny its liability. On February 7th, the company wrote its local agents saying that, prior to the fire, "there was no agreement between you and Mr. Western as to which company this policy should be issued in". The defendant further said, "you have violated the companies' instructions in issuing a policy on a stock encumbered by a chattel mortgage, and we feel certain that *if the company should have been called upon to pay this claim,* they would have looked to you for reimbursement". This letter certainly infers that the company did not assume it would be called upon to pay the claim. The company so notified its agents. The reasonable inference from these communications is that the company intended to repudiate its liability. But the appellant argues that the contents of his letter were not communicated to the insured, and that it therefore furnishes no grounds upon which to base a waiver. We do not understand the authorities require the knowledge of the general denial of liability on the part of the insurer to be communicated to the insured in order to create a waiver on the requirement to file proof of loss.

Indeed some reputable authorities hold that a general denial of liability made by the insurer for the first time in its answer, constitutes a waiver of this clause. (7 Cooley's Briefs on Insurance, 2d ed., p. 6039, sec. 14, e.) It is, however, unnecessary to accept this extreme view in the present case. Knowledge of the return of the premium check was conveyed to the insured. Moreover the defendant's local agents knew that the insured relied upon them to do everything that was legally necessary to collect the insurance. Russell told the plaintiffs he did not think it was necessary to file proof of loss under the circumstances. Even Jenkins, the general agent, told Western after he had listed the various items lost in the fire and their valuation, that that was all he wanted of him. It was the duty of the agent Russell to have told the insured that the defendant was evidently repudiating its obligations under the policy, so that the plaintiffs might be warned to protect themselves by filing the proof. The insured was deceived by the entire course of conduct on the part of the defendant and its agents. In the answer, and throughout the trial of the case, the defendant did deny its liability on the ground that the contract was void. We are satisfied the conduct and declarations of the defendant amount to a denial of its liability and that this constitutes a waiver on that ground of the provision requiring the furnishing of proof of loss.

██  Sending an adjuster to the insured immediately after the fire, who obtained a full report of the property which was destroyed and its value, and who then told the insured that was all they wanted of him, and he would hear from them in a few days, constitutes conduct which would tend to deceive the insured regarding the requirement to supply further proof of loss, and furnish evidence of a waiver of this clause of the contract. (*Ramirez* v. *United Firemen's Ins. Co.*, 46 Cal. App. 451, 454 [189 Pac. 309]; 26 C. J. 403, sec. 517; 33 C. J. 30, sec. 690; 7 Cooley's Briefs on Insurance, 2d ed., p. 6010, sec. 13, g; 5 Joyce on Insurance, 2d ed., p. 5564, sec. 3354, and p. 5606, sec. 3385.) In the authority last cited it is said: ''The general rule seems to be, . . . that any act or series of acts upon the part of the insurer which tend to create a belief in the mind of the claimant under the policy that notice need not be given, or

that proofs of loss will be unnecessary, will operate as a waiver, and release such claimant from a compliance with the provision."

On page 5607 of the last-cited authority, the author says: "If the insurer by its acts and conduct leads the claimant to believe that the company is preparing to adjust the loss, the insurer will be estopped from claiming the proofs were not furnished as provided in the policy."

Under the facts and circumstances of this case we are unable to say there is no substantial evidence to support the findings of the court to the effect that the furnishing of sworn proof of loss was waived by the appellant.

The judgment is affirmed.