[Civ. No. 4836. Third Appellate District.—June 9, 1933.]

BANK OF OROVILLE (a Banking Corporation) et al., Respondents, v. MINNESOTA FIRE INSURANCE COMPANY (a Corporation), Appellant.

Thornton & Watt and Evan Taylor for Appellant.

J. Oscar Goldstein for Respondents.

THOMPSON, J.—The plaintiffs recovered judgment in a suit upon an insurance policy for the total destruction of a warehouse by fire. The appellant contends the claim for insurance was forfeited by failure to present sworn proof of the loss until several days after the time allowed therefor by the terms of the contract. The trial court held this clause of the policy was waived by the conduct of the insurer.

The plaintiff Hayes owned a warehouse at Oroville of the approximate value of $8,000. The Bank of Oroville held a mortgage on this and other property belonging to Hayes to secure an indebtedness of $9,000. Through a local agent, the Minnesota Fire Insurance Company, a corporation, with its western place of business at Seattle, this warehouse was insured February, 1930, for a three-year term, for the sum of $3,000. A mortgage clause was attached to the policy providing that "Loss, if any, on building only, subject however to all the terms and conditions of this policy, payable to Bank of Oroville, Oroville, California". On June 23, 1931, the warehouse was totally destroyed by fire. At

the time of the fire Mr. Hayes was engaged as foreman of a state highway construction company near Emigrant Pass. Upon receipt of information of the fire, he immediately went to Oroville, consulted the president of the bank, and notified the local agent of the insurance company of his loss. The agent promptly wired the company at Seattle. R. V. Smith, the San Francisco agent of the company, was immediately sent to Oroville to adjust the claim. The agent arrived at the scene of the fire within a week thereafter. He investigated the affair, consulted with the president of the bank, acknowledged the bank's mortgage interest to the full extent of the insurance and said "they (the bank) have got to be taken care of". He inquired for the owner, Hayes. He raised no objection to the claim. He departed for San Francisco, leaving an impression with the president of the bank that its claim would be promptly settled in full. He said he would make out an appraisement and prepare the proof of loss for Mr. Hayes to sign. Mr. Putnam, the president of the bank, testified in that regard: "He handed me that card and said he was the adjuster for the Minnesota Fire Insurance Company, and that he had come up to adjust on Hayes' loss, and he says, 'I understand you represent Mr. Hayes.' I told him 'yes', in that particular case that Mr. Hayes was away and I would look after it for him. He says to me, 'Have you made out your appraisement?' I says 'No, I never heard of such a thing as us making out an appraisement.' And he said 'Well, I will make it out, and when I get back to the city I will send you a copy of it, *and I will also fill out and send up a proof of loss* to be executed for Mr. Hayes.' And I says 'All right; if we are not satisfied we will get a carpenter and make our own appraisement,' and he said 'Very well,' and I said 'You understand that the Bank of Oroville has a claim there of three thousand dollars,' and he said 'Yes, that is understood, *they have got to be taken care of,'* and I asked him if it was necessary for the bank to file a proof of loss, and he said 'No,' and that was about the conversation, although I never got these documents from Mr. Smith, neither the appraisement nor the proof of loss filled out."

Having heard nothing further from Smith, after his departure from Oroville, Mr. Putnam wrote him on July 16th, as follows:

"When you were here something over ten days ago to adjust the loss on property of V. B. Hayes, you promised to send me the amount of your adjustment within a week, but up to the present time I have not received same.

"Please advise me what you have decided to do with reference to this loss and oblige,

"Yours very truly."

To this inquiry the adjuster replied on July 18th with an offer of compromise, in which he said he hoped to go to Oroville and take the matter up with Putnam personally. He, however, stated in this letter that, while it would no doubt cost more than the amount of the insurance to restore the building and that it was old and deteriorated, still he would recommend the payment of $2,000 "if Mr. Hayes cares to settle for that amount".

On July 21st, Mr. Putnam wrote to Smith rejecting the proffer of $2,000, and saying positively they would accept no sum short of the entire amount of the insurance.

Under date of July 23d, Smith wrote to Mr. Putnam as follows:

"In view of the attitude you and Mr. Hayes take in this matter, I think it would be advisable for you to prepare and file proof of loss with the company in accordance with the conditions of the policy."

This matter was not sent to the Bank of Oroville, which held the mortgage interest in the destroyed property. It was addressed to Mr. Putnam, "President First National Bank of Oroville". It appears Mr. Putnam was the president of both the Bank of Oroville and the First National Bank. He testified this letter reached the First National Bank in his absence, and that he never heard of it until three or four days before the trial commenced in March, 1932, at which time the defendant called upon plaintiffs to produce the letter. He said that in searching their files it was then discovered in the First National Bank records. No such notice was sent to Mr. Hayes.

Mr. Hayes returned to Oroville about July 21st, and was fully informed by Mr. Putnam concerning the conference with Smith, his promise to prepare the proof of loss and the expectation of a settlement of the claim without further trouble. Hayes returned to his work on the highway without knowledge of the subsequent letter of Smith to Putnam

advising them to prepare the proof of loss. Hayes never heard of this letter of July 23d and had no reason to doubt that Smith would prepare the proof of loss if it became necessary to file such a document. It is true that Putnam would still have had time within which to procure the preparation and filing of the proof of loss after Smith advised him to do so in the letter of July 23d. But he absolutely denies having seen this letter until shortly before the time of the trial. It does not appear that he knew where to reach Hayes during that period of about a month prior to the expiration of time. Mr. Smith had told him that the owner of the insured property must himself swear to a proof of loss, and that a mortgagee of the property could not do it for the owner. At least the owner was never served with notice that Smith had changed his mind and withdrawn his promise to prepare the proof of loss. It is true that after the sixty-day period had elapsed, Putnam wrote to Hayes at Santa Maria, August 25th, saying: "I have not heard from the insurance, and I suppose that you filed your proof of loss. You had better keep track of the time and if no settlement is made by them, during the sixty days, I think you had better place it with an attorney to collect at the end of that time."

This letter indicates that Putnam had not heard of the agent's letter advising them to file the proof of loss. It also suggests that he still hoped for a settlement of the claim, although he cautiously recommended Hayes not to let the time elapse for filing the proof of loss. At least the information contained in this letter from Smith never reached Hayes until the sixty days had passed. When he received Putnam's letters he promptly prepared and forwarded the sworn proof of loss, which reached the company about six days after the limitation of time specified in the policy. The insurance company immediately notified Hayes that it repudiated the obligation created by the policy on the ground that he had failed to file his proof as required by the contract. The good faith of the adjusting agent, as indicated by his conduct in the transaction, may reasonably be questioned.

We are of the opinion the conduct of the adjusting agent of the insurance company amounted to a waiver of the provision of the policy requiring the insured to file a

sworn proof of loss within sixty days after the fire. The property was valued at several times the amount of the insurance. A local agent insured the property with full knowledge of its value. It was totally destroyed by fire. The adjusting agent personally investigated the claim and was acquainted with the surrounding circumstances. He must have known that the loss was far greater than the amount of the insurance. No criticism of the transaction was offered by him. No fraud was charged in the procuring of the policy or otherwise. No defense to the suit was made by the insurance company except the technical one that the insured had forfeited his claim by failing to file his proof of loss until six days after the time had expired. The defendant is estopped from relying on this technical defense because its duly authorized agent himself promised to prepare the proof of loss for the insured if it became necessary to do so, and for the reason that the agent also led the assured to believe his claim would be adjusted without the necessity of filing this proof by saying to Putnam with regard to the bank's interest in the policy, "they have got to be taken care of". Moreover, the agent made no effort to notify Hayes, who was the owner of the insured property, that he had changed his mind and withdrawn his promise to prepare the proof of loss. Quite a similar situation existed in the case of *Francis* v. *Iowa Nat. Fire Ins. Co.*, 112 Cal. App. 565 [297 Pac. 122]. In that case the court held that similar conduct estopped the insurance company from contending that the policy was forfeited by failure to file the proof of loss within the time prescribed in the contract.

It is true that the Bank of Oroville, as mortgagee of the insured property, might lose its right to recover on the policy under the mortgagee's clause which was attached thereto, in the event of a breach of the contract by the insured even without the mortgagee's knowledge thereof. (Sec. 2541, Civ. Code; *Welch* v. *British American Assur. Co.*, 148 Cal. 224 [82 Pac. 964, 113 Am. St. Rep. 223, 7 Ann. Cas. 396].) Section 2541, *supra*, provides: "Unless the policy otherwise provides, where a mortgagor of property effects insurance in his own name providing that the loss shall be payable to the mortgagee, or assigns a policy of insurance to a mortgagee, the insurance is deemed to be

upon the interest of the mortgagor, who does not cease to be a party to the original contract, and any act of his, prior to the loss, which would otherwise avoid the insurance will have the same effect, although the property is in the hands of the mortgagee, but any act which, under the contract of insurance, is to be performed by the mortgagor, may be performed by the mortgagee therein named, with the same effect as if it had been performed by the mortgagor.''

Even though the policy did contain the mortgage clause to the effect that ''loss, if any, subject to all the terms and conditions of this policy, is payable to Bank of Oroville'', this did not require the mortgagee to also file a separate proof of loss in addition to the one which the contract required the insured to file. The filing of such proof by the insured, under the circumstances of this case, is a sufficient compliance with the contract. In 7 Cooley's Briefs on Insurance, second edition, page 5746, it is said in that regard: ''The general rule seems to be that, unless the mortgagee clause attached to the policy makes it obligatory on the mortgagee to furnish proofs of loss and an appraisement, it is not a condition precedent to his right of action that he furnish the same.''

Under the policy in this case, which provides that ''Within sixty days after the commencement of the fire the insured shall render to the company . . . preliminary proof of loss consisting of a written statement signed and sworn to by him . . . '', it became necessary for the insured Hayes to file with the company his sworn proof of loss within sixty days after June 23d, upon which date the fire occurred, unless that requirement was waived by the acts or conduct of the defendant or its authorized agent. (*McCormack* v. *North British Ins. Co.*, 78 Cal. 468 [21 Pac. 14]; *White* v. *Home Mutual Ins. Co.*, 128 Cal. 131 [60 Pac. 666]; *Gillon* v. *Northern Assur. Co.*, 127 Cal. 480 [59 Pac. 901]; *Estrada* v. *Queen Ins. Co.*, 107 Cal. App. 504 [290 Pac. 525].) The authorities are, however, uniform to the effect that the provision of an insurance policy, which requires the filing of proof of loss, may be waived by the insurer or its duly authorized agent. (Sec. 2636, Civ. Code; 26 C. J. 393, sec. 507; 33 C. J. 23, sec. 680; 7 Cooley's Briefs on Insurance, 2d ed., p. 5955, sec. 12; *Francis* v. *Iowa Nat.*

*Fire Ins. Co.*, 112 Cal. App. 565 [297 Pac. 122]; *Savage* v. *Norwich Union Fire Ins. Soc.*, 125 Cal. App. 330 [13 Pac. (2d) 955].)

In the present case we are satisfied the delay in filing the proof of loss until six days after the expiration of the sixty-day period within which the policy requires that document to be filed was waived by the conduct of the agent of the insurance company.

The law abhors forfeitures of contracts. The question of a waiver of this provision of an insurance policy depends upon the circumstances of each particular case. Where a cause of action upon an insurance policy for recovery of loss sustained on account of fire is otherwise valid, the question of a mere delay in filing the required proof of loss, or the waiver thereof, will be determined in favor of the insured when this may be reasonably done without violence to the facts of the case. In 5 Joyce on Insurance, second edition, page 5564, it is said, concerning the question of waiver: "The question concerning whether or not there has been a waiver of this provision must in all cases depend upon the circumstances of each particular case. The courts will construe this provision, as a rule, against the insurer, and will not scan very closely evidence introduced by the insured tending to rebut a technical forfeiture."

On page 5607 of the last cited authority the author says: "If the insurer by its acts and conduct leads the claimant to believe that the company is preparing to adjust the loss, the insurer will be estopped from claiming the proofs were not furnished as provided in the policy."

In view of the foregoing we are of the opinion the findings and judgment are adequately supported by the evidence.

The judgment is affirmed.

Pullen, P. J., and Plummer, J., concurred.