**DORRANCE et al. v. PENNSYLVANIA FIRE INS. CO. et al.**

No. 29454.

United States District Court
N. D. California, S. D.

June 25, 1951.

William Jacka (of Rea, Jacka & Frasse), San Jose, Cal., Morse Erskine, II (of Erskine, Pillsbury & Tully), San Francisco, Cal., for Dorrance.

Evans M. Taylor (of Thornton & Taylor), San Francisco, Cal., for Pennsylvania Fire Insurance Co.

———◆———

OLIVER J. CARTER, District Judge.

This is an action brought by plaintiffs on an insurance policy issued by the defendant, Pennsylvania Fire Insurance Company, insuring certain personal property of plaintiffs against loss or damage occasioned by theft. The policy was a so-called Personal Property Floater Policy which covered a certain natural wild mink coat insured for $4,500.00, a pair of diamond and ruby earrings insured for $350.00, and miscellaneous items of jewelry and other personal property insured for $3,033.00. The defendant has admitted liability for the earrings in the sum of $350.00, one pair of gloves in the sum of $18.00, currency in the sum of $100.00, and for all other items stolen in the sum of $250.00, making a total of $718.00. This leaves only the issue of the responsibility of the defendant for the fur coat.

The action was dismissed as to the defendant, James A. Clayton & Co., leaving as parties litigant the plaintiffs, who are husband and wife, and the defendant Insurance Company.

The fur coat and other items of personal property were stolen from the plaintiffs in San Francisco on November 13, 1948. On the same day and after the discovery of the theft, Mrs. Dorrance gave notice of the loss by telephone to James A. Clayton & Co., the general agent of the defendant from whom plaintiffs purchased the policy of insurance. She talked to Mr. Reed, the president of James A. Clayton & Co., who told her not to worry, that they would take care of everything. The testimony of Mrs. Dorrance and Mr. Reed discloses a complete understanding on this point. Mrs. Dorrance said, "Well, he told me that he would take care of it, or Clayton and Company would take care of it; that I needn't worry about it, or some such. I don't remember his exact words, but I do know he did say he would take care of it for me." Mr. Reed said, "Well, I told her not to worry, that we would take care of it for her, because at the moment, her husband was in the hospital. I don't know whether he was operated on that day or the day before, but she had plenty to think about, so I told her we would take care of it." At that time the policy of insurance was in the possession of James A. Clayton & Co., being held for the plaintiffs. This agency had been in business in San Jose, California for many years and had acted as agent for the defendant for a number of years. The Agency immediately notified by tele-

phone the Loss Department of defendant of the loss, and the defendant in turn assigned P. B. Gaynor of the firm of Gaynor-DeWitt, Adjusters, to investigate the loss. Mrs. Dorrance gave him a complete report of the circumstances of the theft and a list and description of the property stolen. The theft occurred on Saturday and the report was made to the adjuster by Mrs. Dorrance the following Monday. Thereafter the adjuster continued to investigate the theft and reported to the plaintiffs that the thief had left a trail of forged checks across the country, using checks and identification cards taken from Mr. Dorrance's stolen purse. This investigation went on through December of 1948 and into January of 1949, during which time the thief was not apprehended. On January 11, 1949 the superintendent of the Loss Department, Pacific Department of defendant, wrote to James A. Clayton & Co. in part as follows:

"Because of the fact that it has been almost two months since this loss occurred he, Mr. Gaynor, realizes that something will have to be done, so he stated he would telephone to Mrs. Dorrance and if she wanted the loss settled now, he would make arrangements to close the loss and in due time you will receive the draft in payment."

On January 21, 1949 Mr. Gaynor called James A. Clayton & Co. saying, among other things, that he (Gaynor) would prepare a proof of loss and mail it to the Agency. This discussion was between the agents of the Company and they did not communicate to the plaintiffs the necessity of filing the proof of loss as discussed. The proof of loss was never sent because

on January 22, 1949 Gaynor received word of the apprehension of the thief. The Dorrances were notified of the apprehension of the thief as they were about to leave for the Hawaiian Islands for a vacation. During this time and on March 31, 1949 the fur coat was recovered in Detroit, Michigan. On May 11, 1949 the coat was returned to San Francisco where Mrs. Dorrance subsequently inspected it. She said she did not know whether or not it was her coat although it had the same unusual markings as her coat. After the coat was cleaned and glazed Gaynor was authorized to, and did on August 8, 1949, offer Mrs. Dorrance the coat and $1,000.00 for damages, which she refused, claiming that it was not her coat, and if it was she she wanted the insured value of the coat ($4,500.00) rather than the coat, because of the damaged condition of the coat. About this time (August, 1949) the plaintiffs consulted an attorney and on August 11, 1949 they requested that James A. Clayton & Co. deliver the policy to their counsel. It was not until then that the plaintiffs became aware of the fact that no proof of loss had been filed or that one would be required. Following an attempted settlement through the Agency a written proof of loss was prepared by plaintiffs and sent to defendant on November 5, 1949.[1] Thereafter defendant gave notice that it was in disagreement with the amount of the loss claimed, particularly as to the fur coat, and demanded that the question of the loss due to damage to the coat be submitted to appraisers appointed by the parties in accordance with Condition 22 of the policy.[2] Plaintiffs refused to appoint an appraiser and brought this action.

---

1. On this date plaintiffs' counsel wrote the defendant as follows: "Although we believe that, due to the acts and statements of your company, its officers, agents and employees, it actually is not necessary so to do, said acts and statements actually constituting a waiver of the requirements under the terms of the above numbered policy, we enclose proof of loss duly signed by John K. Dorrance and Carol Dorrance, the insured under said policy."

2. Condition 22. "In case the Assured and this Company shall fail to agree as to the amount of loss or damage, the same shall be ascertained by two competent and disinterested appraisers, the Assured and this Company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately the sound values and damage, and failing to agree, shall submit their differences

Plaintiffs contend that the coat recovered and offered to them is not the coat that was stolen. Because of the peculiar markings on the coat and because of its unusual style there is no question but what the coat offered to plaintiffs is the insured coat. However, it had been substantially damaged by the theft and the plaintiffs contend that they are not now bound to take it back, even if it is the same coat. They argue that the defendant waived the filing of a written proof of loss more than sixty (60) days prior to the recovery of the coat and that defendant became liable for the value of the coat up to the policy limit of $4,500.00.

■ The basic problems are, was there a waiver of the filing of a written proof of loss as specified in Condition 10, [3] of the insurance contract, and if there was a waiver, what is its effect, if any. Inasmuch as the insurance contract was entered into in California and the theft occurred in California, the law of California will be determinative of the rights and liabilities of the parties.

■ The California Insurance Code provides, "Delay in the presentation to an insurer of notice or proof of loss is waived, *if caused by an act of his,* or if he omits to make objection promptly and specifically upon that ground."[4] (Emphasis added.) The California Courts have found a waiver of a written proof of loss present when an assured notified the company's issuing agent orally that he has suffered loss and an adjuster has been sent to interview the assured.[5] California Jurisprudence [6] states the rule as follows:

"Any conduct on the part of an insurer which tends to create a belief in the mind of the claimant under the policy that notice need not be given, or that proofs of loss will be unnecessary, operates as a waiver of a policy provision requiring such notice or proof * * * sic * * * thus proof of loss is waived by denial of liability, or by a statement by the adjuster that proofs are unnecessary and that the loss will be adjusted without them, *or by a statement by the insurer's agent, after loss, that he would attend to giving notice, followed by the appearance of an adjuster,* or by joining in arbitration of the loss, where such proceedings were required to be taken after proofs had been received." (Emphasis added.)

There are a number of California cases [7] which have held that the provisions of an insurance policy requiring the filing of a proof of loss within a specified period have been waived where there has been oral notification of the loss to the company or its agent, followed by an interview by an adjuster and a denial of liability by the company for the failure to file a proof of loss within a specified period.

In this case it is clear that a waiver is present because the assured, Mrs. Dorrance, gave immediate notice to the Company's agent, Mr. Reed, of the loss and he assured her that everything would be taken care of. The Company's adjuster,

to the umpire; and the award in writing of any two shall determine the amount of the loss; the parties thereto shall pay the appraisers respectively selected by them, and shall bear equally the expense of the appraisal and umpire."

3. Condition 10. "The Assured shall immediately report to this Company or its Agent every loss or damage which may become a claim under this policy, and shall also file with the Company or its Agent within ninety days from date of loss, a detailed sworn proof of loss. Failure by the Assured either to report the said loss or damage or to file such written proofs of loss as herein provided shall invalidate any claim under this policy."

4. California Insurance Code § 554.

5. Francis v. Iowa National Insurance Co., 112 Cal.App. 565, 297 P. 122; cf.: National Union Fire Insurance Co. v. California Cotton Credit Corp., 9 Cir., 76 F.2d 279.

6. 14 Cal.Jur. § 116.

7. Ramirez v. United Firemen's Insurance Co., 46 Cal.App. 451, 189 P. 309; Estrada v. Queen Insurance Co., 107 Cal. App. 504, 290 P. 525; Bank of Oroville v. Minnesota Fire Insurance Co., 132 Cal. App. 510, 511, 23 P.2d 83.

Mr. Gaynor, appeared and made a complete investigation with the full cooperation of Mrs. Dorrance, and not until August of 1949, after the recovery of the coat and after Mrs. Dorrance had denied that it was her coat, was it indicated to her that a written proof of loss would be required by the Company in order to settle the claim. On this point Mr. Reed testified: "Q. And, Mr. Reed, one more question. At any time after this theft, did you notify either Mr. or Mrs. Dorrance that it was necessary for them to file a proof of loss in connection with this theft that had occurred? A. No."

█ The defendant concedes that there was a waiver of the time of filing the proof of loss by reason of the conduct of its agents, and has made no objection to the filing of the proof of loss more than ninety (90) days after the theft, and it is the position of the defendant that it was not required to adjust the loss occasioned by the theft until sixty (60) days after the filing of a written proof of loss, even though the time for filing the proof of loss within the period prescribed in the policy had been waived. If this were the extent of the waiver, there is no question but what the plaintiffs would be required to accept the coat and to adjust the damages to the coat in accordance with the appraisal provisions of Condition 22 of the policy. However, the facts of this case will not permit such a construction of the waiver. The conduct of the Company and its agents establish a waiver not only of the time of the filing of the proof of loss, but of any filing of the proof of loss. The plaintiffs were told by the agent of the Company, on the day of the theft, that everything would be taken care of, which was followed by an investigation by an adjuster of the Company, and during all of this time the agent had possession of the policy of insurance. It was a little less than five months from the time the theft was reported and waiver was made

until the coat was recovered, and it was almost ten months after the report of the theft and the waiver before Mrs. Dorrance was told that the plaintiffs would have to file a written proof of loss. During all of this time the plaintiffs were acting under the assumption that everything had been taken care of, including the filing of the proof of loss. Also during this time the defendant had ample opportunity to make investigation into the facts upon which the claim of loss was based and to ascertain the reasonable value of the coat at the time of the theft. The seller of the coat had been contacted and its condition just prior to the theft ascertained. In fact, the defendant had the opportunity to do everything it could have done had the formal written proof of loss been filed. It is obvious that the purpose of filing a proof of loss had been fulfilled.[8] Under such circumstances this court is of the opinion that the assumption of the plaintiffs was completely warranted.

█ Having waived the filing of a written proof of loss and having recovered the stolen coat long after the sixty (60) day period in which the loss was required to be paid under the terms of the policy, should the defendant now be permitted to force the plaintiffs to accept the coat, together with the appraised value of the damages caused by the theft? Under the terms of the policy and facts of this case, this should not be permitted.

The contract in question provides that, "All adjusted claims shall be paid or made good to the assured within sixty (60) days after presentation and acceptance of satisfactory proof of interest and loss at the office of this company."[9]

In Sawyer v. National Fire Insurance Company[10] an insured automobile was stolen. The court found a waiver of the written proof of loss to be present. The assured brought suit upon the insurance contract and the insurance company contended that no suit could be brought upon

8. Martin v. Postal Union Life Insurance Co., 31 Cal.App.2d 329, 87 P.2d 897.

9. Condition 13 of Insurance Contract.

10. 53 S.D. 228, 220 N.W. 503, 505, 61 A.L.R. 306; See also: Cancilla v. Fireman's Fund Insurance Company, 277 Pa. 223, 120 A. 824.

the policy until sixty (60) days after the proofs had been filed with it. The court stated, "Had formal proofs of loss been furnished, the claim would become actionable, 60 days thereafter. If the furnishing of proofs was waived, the 60 days would begin to run when the acts constituting the waiver were done." In another automobile theft case, O'Connor v. Maryland Motor Car Insurance Co.[11] the proofs were filed but the automobile was recovered more than sixty days afterwards. The Company contended the assured could not recover the face amount of the policy but rather must accept the automobile which had been recovered. The court held for the assured, stating, "Obviously, in order to make an insurance policy of this kind of value to the owner of the property, there must be some time fixed after which the return of the automobile will not release the company from liability. * * * [sic.] * * * *Fairly construed, we think this insurance policy intended to fix the date at 60 days after the notice and satisfactory proof of loss had been received by the company* * * *in other words, to fix the date at which the insured would not be compelled to take the stolen car back, even if recovered, at the date when the insurance money was agreed to be paid."* (Emphasis added.)

A leading authority states the rule as, "Provisions in contracts of insurance requiring notice and proofs of loss, injury, death, claim against the insured, etc., may, like all other provisions or conditions which are inserted by the insurers for their benefit or protection, be waived by them, or by their authorized agents, and since the waiver of notice and proofs matures the insured's right of action on the policy, it thereby effects the same result as though the condition requiring notice and proofs were struck out of the policy."[12] The O'Connor case is annotated at 3 A.L.R. 793 and the annotator states that at the time of writing, this case was the only one of its type, but makes this comment, "Under policies of this kind, in common with other policies, a definite time for payment of the loss is fixed. When this time has elapsed, before recovery of the car, it would seem that the insurer is clearly bound to pay its insured value, and cannot, although the machine may be subsequently recovered, compel the insured to receive it unless, of course, an express provision for such return is contained in the policy."[13]

Defendant's argument that the loss occasioned by the theft of the coat was not an adjusted loss within the meaning of Condition 13 of the policy and was therefore not payable within sixty (60) days after the waiver, is not tenable. Because of the waiver, defendant is in the same position as if a written proof of loss had been filed by plaintiffs and more than sixty (60) days had expired from the filing of the proof of loss before any objection had been made to the loss claimed. The purpose of Condition 13 of the policy is to require the payment of all satisfactory claims within sixty (60) days after filing of the proof of loss, or the setting forth of objections to the claim of loss set forth in the proof of loss within the sixty (60) day period, so that the loss may be adjusted by agreement between the insurer and the assured, or in accordance with other conditions of the policy. If an insurer could successfully assert that a claim was not an adjusted claim after a satisfactory proof of loss had been filed with it for more than sixty (60) days without objection, and thereby defeat or delay the payment of the claim, the sixty (60) day period of limitation would be meaningless. The waiver of the filing of the proof of loss being complete and the sixty (60) day period having expired in which objection to the claim of loss should have been made, the defendant is obligated to pay the plaintiffs, up to the policy limits, the reasonable value of the property stolen. It also follows that the time in which the defendant could demand an appraisal, under provisions of Condition 22 of the

---

11. 287 Ill. 204, 122 N.E. 489, 491, 3 A.L. R. 787.

12. 7 Couch, Cyclopedia of Insurance Law § 1560.

13. See: Subsequent Annotation, 75 A.L.R. 1420.

policy expired prior to the recovery of the coat.

The defendant also contends that if there was a waiver of the filing of the proof of loss, such waiver was in turn waived by the plaintiffs by reason of their conduct in their negotiations with the Company and its agents after the waiver and after the recovery of the coat. The gist of this argument seems to be that the plaintiffs did not demand the payment of the value of the coat until long after the coat had been recovered, and that in any event they actually filed a written proof of loss. A fair interpretation of the evidence does not substantiate the defendant's contention on this point. In addition to the coat, several items of jewelry of sentimental value to the plaintiffs were stolen by the thief. The plaintiffs were always anxious to recover these items of jewelry rather than to accept their value in money. It was therefore both natural and logical for the plaintiffs to withhold their final demand for payment on the whole loss until it became very clear that they could not recover their jewelry. The testimony of the defendant's witness, Gaynor, the adjuster for the defendant, is illuminating on this point. After he had the coat cleaned, glazed and relined, he called Mrs. Dorrance and asked her to take another look at the coat. He testified as follows:

"Q. And what did she do or what did she say? A. She came up and still contended it wasn't her coat at that time.

"Q. Do you remember when that occurred? A. It was probably some time in August. My memory is not too good on that. It was either the later part of July, '49 or August of '49.

"Q. And up to that time had you had any conversation with Mrs. Dorrance with respect to whether or not she wanted settlement under the policy irrespective of the return of the coat? A. No, we never discussed the settlement. We were anxious to make recovery of the jewelry and I just said, 'I will keep on endeavoring to locate the jewelry and if we don't find it, we will be glad to draw up a proof of loss for you and settle your claim.'

"Q. And what was her response to that? A. Said that was perfectly all right. She was very anxious to get her jewelry back.

"Q. And how about the coat? A. And the coat, too."

While Mr. Gaynor is inconsistent about the coat in stating that Mrs. Dorrance said it wasn't her coat, and then later said that she was anxious to get the coat back, he is very clear on the proposition that the plaintiffs were anxious to recover the jewelry. It was shortly after this conversation that the plaintiffs discussed the matter with their attorney and for the first time demanded the insurance policy from James A. Clayton & Co. This was also the first time that the plaintiffs became aware that proof of loss would be required before the claim of loss would be paid. None of the stolen jewelry was ever recovered and the defendant has admitted liability for the stolen jewelry in accordance with the value set forth in the policy. The plaintiffs, through Mrs. Dorrance, consistently maintained that the recovered coat was not the stolen coat, and the defendant was at no time misled by the plaintiffs' conduct subsequent to the waiver of the filing of the proof of loss. The subsequent filing of the proof of loss cannot be construed as a waiver on the part of the plaintiffs of their rights as the result of defendant's waiver of the filing of the proof of loss, because at that time they were attempting to negotiate a settlement of the claim with the Company and were informed that a proof of loss must be filed before the settlement could be considered. The defendant was advised by counsel for plaintiffs at the time of the filing of the proof of loss on November 5, 1949 that the plaintiffs believed that the requirements for filing a proof of loss under the policy had already been waived.[14] It is very easy to understand how an assured who had suffered a loss would file a proof of loss in order to attempt to settle the claim of loss rather than bring an action on the

14. See Note (1), supra.

policy. The fact that the subsequent negotiations did not bring about a satisfactory settlement does not in any way destroy the validity of their contention that the filing of the proof of loss was waived by the conduct of the defendant, and the subsequent filing of the proof of loss cannot be construed to be a waiver of their right to obtain the reasonable value of the property stolen.

The cause being properly before this court under the provisions of 28 U.S.C.A. § 1441(c), the plaintiffs are entitled to judgment for $5,218.00, together with interest thereon from January 12, 1949, and for their costs of suit. Plaintiffs' counsel shall prepare findings of fact, conclusions of law and a judgment in accordance with the views expressed herein.